Edward McMILLIAN, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–89–00877–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 18, 1993.

Douglas M. O'Brien, Houston, for appellant.

Alan Curry, Houston, for appellee.

Before J. CURTISS BROWN C.J., and MURPHY and JUNELL, JJ.

## OPINION ON REMAND

J. CURTISS BROWN, Chief Justice.

Appellant entered a plea of not guilty before a jury to the offense of aggravated assault. TEX. PENAL CODE ANN. § 22.-02(a)(1). He was convicted and the jury assessed punishment at ten years imprisonment and a $5,000.00 fine.

On August 30, 1990, we affirmed the trial court's judgment and appellant filed a petition for discretionary review. The Court of Criminal Appeals granted appellant's petition, vacated our judgment and remanded the case to our court for reconsideration of the issues presented. *McMillian v. State*, 844 S.W.2d 749 (Tex.Crim. App.1993). In his sole point of error, appellant argues the trial court erred during the punishment stage of trial by allowing testimony of a prior unadjudicated offense. We affirm.

The jury found appellant guilty of intentionally and knowingly causing serious bodily injury to his wife, LaJuana McMillian, by hitting her in the face with his fist. Mrs. McMillian's cheekbone was fractured in three places. Mrs. McMillian's treating physician testified that the cheek bone is a very strong bone but would fracture when approximately 500 pounds per square inch of force is applied to the bone. The bone was almost displaced off the side of her face. She also suffered a blunt trauma to her right eye; the eye sank into its socket and fell down into her sinus cavity.

Mrs. McMillian was admitted to Ben Taub Hospital where she was treated with antibiotics for one week. She then underwent an extensive seven hour surgical procedure to prevent the loss of the use of her eye and to repair the serious disfigurement to her face. The eye socket had shattered and had to be plated and wired. A bone was removed from the opposite side of Mrs. McMillian's face and placed into the eye socket to support her eye. Mrs. McMillian remained in the hospital for ten additional days.

Because an incision was done on her eyelid during the surgery, Mrs. McMillian was not able to open her eye until three weeks after the surgery. The eyeball had moved up into her head and the pupil was not visible. The eyeball did not move back down until three months later.

Surgery was also performed through Mrs. McMillian's mouth. Some of Mrs. McMillian's facial bones had been crushed. The bones had to be moved and replaced with permanent plates and wires. This surgery required packing Mrs. McMillian's sinuses with approximately ten yards of gauze. Mrs. McMillian's physician removed the gauze a week later by pulling it through Mrs. McMillian's nose.

Mrs. McMillian initially lost all feeling in her temple and her eyesight was blurred. Her vision was not restored until more than three months later. She was swollen for several weeks after the surgery. Mrs. McMillian was not able to return to work for three months. She did not have medical insurance and her medical costs were more than $14,470.00.

During the punishment phase of trial, Mrs. McMillian testified that about two months after the primary assault, appellant appeared at her apartment. Appellant and his wife had been separated for approximately three to five years and led separate lives. Because she could not afford the expense involved, Mrs. McMillian had not divorced appellant. When Mrs. McMillian refused to let appellant inside her apart-

ment, he repeatedly knocked on the front door and on a bedroom window. Mrs. McMillian called the police and told them about the situation, the earlier assault, and that a warrant for appellant's arrest was outstanding. The police advised Mrs. McMillian to leave her apartment. She went across the street to Ricky Lancaster's apartment. Lancaster was Mrs. McMillian's boyfriend.

At approximately 5:00 in the morning, appellant began knocking on Lancaster's bedroom window. Appellant and Lancaster exchanged angry words. Appellant exhibited a handgun. He broke a window and then picked up a barbecue pit from a neighbor's apartment and hurled it through a living room window. Mrs. McMillian called 9–1–1. Lancaster went to the front door and fired a shot in the air. Appellant dared Lancaster to kill him.

When the police arrived, they could not locate appellant. After investigating the damage done by appellant, an officer walked over to Mrs. McMillian's apartment. Appellant had cut a hole in Mrs. McMillian's window and had also cut the tires on Lancaster's automobile.

After the police left, appellant returned to Lancaster's apartment and again heaved the same barbecue pit through another window. Appellant then entered the apartment by jumping through the broken window. Lancaster began firing his gun at appellant. The gun jammed and Lancaster and appellant began fighting. Mrs. McMillian called the police, grabbed a knife and stabbed appellant three times in the leg.

Appellant was eventually subdued by Lancaster, an upstairs neighbor, Mrs. McMillian, and appellant's mother. Appellant was taken into police custody. Appellant had cut four car tires and broken six windows, a stereo, a glass coffee table, and a bed.

■ On appeal, appellant argued that evidence of specific conduct is inadmissible at the punishment phase of trial to show his suitability for probation.

"[E]vidence may, as permitted by the Rules of Evidence, be offered by the State and the defendant *as to any matter the court deems relevant to sentencing,* including the prior criminal record of the defendant ..." TEX. CODE CRIM.PROC.ANN. art. 37.07, Sec. 3(a) (Vernon 1989) (Emphasis added). The legislature added the emphasized language in 1989.

In our original opinion, we held this statute allowed evidence of unadjudicated offenses to be admitted at the punishment phase, provided the court determined the proffered offense to be relevant. We did not determine if the testimony was admissible through other avenues. The Texas Court of Criminal Appeals recently has construed article 37.07(3)(a), to provide that:

> even if deemed relevant to sentencing by the trial court, evidence is not admissible at punishment, *unless* (1) it is permitted by the Rules of Evidence, and (2) if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.07(3)(1)'s definition of prior criminal record.

*Grunsfeld v. State,* 843 S.W.2d 521 (Tex. Crim.App.1992) (*reh'g denied*).

In *Grunsfeld,* the Dallas Court of Appeals held that:

> ... evidence of extraneous, unadjudicated offenses, even if deemed relevant to sentencing by the trial court, would have to meet two tests. First, it would have to be evidence permitted by the rules of evidence. Second, if it is part of a defendant's prior criminal record, as it has been considered in the past, it must comply with the statutory definition of that term.

*Id.,* n. 5. This is the same test that was set forth in *Murphy v. State,* 777 S.W.2d 44, 47 (Tex.Crim.App.1989):

> First, it must be determined that the extraneous offense is relevant.... Second, the evidence must possess probative value which outweighs its inflammatory or prejudicial effect.

*Id.*

The instant case is distinguishable from *Grunsfeld* and the admissibility of Mrs. McMillian's testimony at the punishment phase can be determined by using the above test.

At the beginning of the punishment phase, the following colloquy occurred outside the presence of the jury:

DEFENSE: Your Honor, I anticipate that this is the witness for whom the prosecution is going to bring in the extraneous offenses ... and would reurge my Motion in Limine to leave out evidence testimony [sic] whatsoever of this extraneous offense.

THE COURT: I'll allow it to the extent as she testified about the incident itself. I'll deny your Motion in Limine to that extent. I will grant it to the extent it makes reference to the fact what the legal system has called criminal or would it not relevant [sic] to at least pending criminal—

\* \* \* \* \* \*

THE COURT: But all I'm asking is maybe—I suggest you not get into details on the criminal mischief having been filed. My question becomes to the State would the pending criminal mischief against him be admissible or not?

THE STATE: I think it's relevant that charges were filed and it's unadjudicated.

THE COURT: Okay. I believe it is, too. Defense counsel made no further objections to the testimony.

The incident Mrs. McMillian and Lancaster testified about at the punishment hearing was not about appellant's prior criminal record. As can be seen from the above exchange, the trial court limited the evidence about appellant's conduct and did not permit the State to reveal the penal consequences of that conduct. In addition, the State made no attempt to connect appellant's behavior to the filing of criminal charges. The State did not emphasize the criminal conduct or nature of the act but instead used the testimony to illustrate appellant's behavior. That behavior indicated a pattern of activity directed at appellant's victim, his wife. While such conduct may, in fact, have been criminal in nature, the State's emphasis was on appellant's continuing relationship to his victim and appellant's inability or unwillingness to refrain from destructive behavior toward his wife.

The jury was asked to consider probation for appellant. Appellant's conduct is indicative of what society might expect if he were placed on probation. Appellant did not testify at the punishment phase. His aunt, however, testified that appellant was a "good person." She testified appellant would be capable of walking "the straight and narrow line" while he was on probation. The aunt said appellant would be rehabilitated by being placed on probation, as opposed to being sent to prison. She further testified appellant had respect for the law and she did not believe appellant would actually carry out a threat on Mrs. McMillian's life. The jury can accept or reject all or any of a witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981).

During the guilt-innocence stage of trial, the jury heard testimony about the severe injuries appellant inflicted upon his wife. The State's evidence was extremely relevant as it pertained to appellant's continuing threats to his wife. The extraneous offense complained about occurred just two months *after* appellant was arrested for brutally assaulting his wife. Appellant's subsequent attack upon his wife was part of a violent, malicious, continuing scheme to harm his wife.

In both *Murphy* and *Grunsfeld,* the Court of Criminal Appeals was concerned with the admissibility of the accused's "prior criminal record." In *Murphy,* the court said the probative value that appellant would likely break the law in the future because he had done so in the past, was weakened because appellant had not been arrested, charged or indicted for acts committed prior to the commission of the principal offense. *Murphy,* 777 S.W.2d at 49.

In the present case, the evidence admitted at the punishment phase concerned appellant's conduct *after* he committed the primary offense. Unlike *Murphy* and *Grunsfeld,* appellant had already come into contact with the criminal justice system at the time he engaged in the conduct in question. While *prior* acts may have little relevance to a determination of whether an

accused will conform his conduct to the requirements of the law, evidence regarding what an accused does *after* he is in the process of being called to account for his earlier actions is obviously much more probative.

■ Such evidence regarding the circumstances of the offender is highly relevant to the jury in deciding whether or not to grant or deny appellant's request for probation. Punishment should fit the offender as well as the crime. Where, as here, the evidence is not used to show an accused has broken the law at other times, but is instead employed to give some insight into the kind of person the jury is sentencing, such evidence becomes highly relevant. To hold otherwise would be asking the jury to exercise its discretion in a vacuum. When the jury is required to engage in such an undertaking with its head in the sand, then the jury is deprived of information it requires to do its work and justice is perverted.

■ The probative value of appellant's intent to harm his wife and his ability to abide by the requirements of probation clearly outweighed any perceived prejudicial effect.

> Whether the fact that an accused has committed criminal acts in the past makes it arguably less probable that he or she will follow the law in the future, is a question best decided on a case by case basis according to the facts of each case. It may, for instance, be more probative if the extraneous offense was committed by a defendant *after* charges were brought against him.

*Murphy v. State,* 777 S.W.2d at 48 & n. 3 (emphasis in original).

The decision to recommend probation is a decision wholly within the discretion of the jury. The State's evidence of appellant's subsequent offense was reasonable information for the jury to have when called upon to decide whether or not to recommend probation.

The testimony was not part of appellant's prior criminal record and the testimony met the rules of evidence in that the testimony was relevant and its probative value outweighed any prejudicial effect. Accordingly, we find the testimony was properly admitted. We overrule appellant's sole point of error and affirm the judgment of the trial court.

Former Justice JUNELL not participating.