**Carlton Andrew JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–93–00238–CR.**

Court of Appeals of Texas, Houston (14 Dist.).

Jan. 27, 1994.

Discretionary Review Refused May 18, 1994.

Joe Cannon, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Before MURPHY and ELLIS, JJ., and JACKSON B. SMITH, Jr., J. (Retired, Sitting by Assignment).

## OPINION

ELLIS, Justice.

Appellant, Carlton Andrew Johnson, appeals his sentence for aggravated robbery. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1994). Appellant pled guilty without an agreed recommendation and a finding of guilt was withheld during the compilation of a presentence investigation report. The trial court then sentenced appellant to fifteen (15) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

On March 30, 1992, the trial court deferred a finding of guilt while a presentence investigation (PSI) report was being compiled. Part of the judge's reasoning behind deferring the finding of guilt was that appellant had told the trial judge that he was going to enroll in college the following fall. On September 18, 1992, appellant was arrested and charged with possession of a controlled substance. On February 11, 1993, the trial court held a punishment hearing and sentenced appellant to fifteen (15) years in prison.

Appellant asserts three points of error. First, the PSI report upon which appellant's sentence was based was omitted from the record, although offered and admitted into evidence without objection during the punishment hearing, through no fault of appellant, thus denying appellant an effective appellate review of his conviction. Second, the trial court erred in considering a case pending against appellant as a part of the punishment in this cause, after assuring defense counsel it would have no part in the sentencing process on this case. Third, the trial court erred in considering an unadjudicated offense pending against appellant as a part of the punishment in this cause, particularly after assuring defense counsel that the offense would have no part in the sentencing process on the case.

■ In his first point of error, appellant argues that it was ineffective assistance for trial counsel to not designate the PSI report as part of the record and that it would be ineffective assistance of appellate counsel if we proceed without the PSI report in the record. He states that appellate counsel was not appointed until after the date to timely file a designation of record and is now unable to effectively appeal the case without reviewing the PSI report upon which the court based its sentencing decision. Appellant asserts that "[b]ecause there was error in failing to include the pre-sentence report in the appellate record, this Honorable Court should order the record supplemented with that document and should further order time for additional briefing, if necessary, as a result of that addition to the record." These requests are not appropriate for a brief on appeal. Appellate counsel should have filed motions requesting this court to supplement the record and extend time for filing a brief. We will not entertain matters on appeal that are appropriate for pre-submission motions. Appellant's first point of error is overruled.

In his second and third points of error, appellant argues that the trial court erred in considering the subsequent unadjudicated charge of possession of a controlled substance as part of the punishment in this cause. The parties discussed the two points together in their briefs and we will do the same in our opinion. Appellant argues that it is apparent that the trial judge considered the unadjudicated charge by the questions he asked a witness, the comments he made when assessing punishment, and some questions asked by the prosecutor. Appellant complains specifically about the following exchange that occurred after cross-examination of appellant's brother, Russell Johnson:

THE COURT: Mr. Johnson, the witness, how long was he—remember you appeared here on June 25th, 1992; you and your mother appeared?

THE WITNESS: Yes, sir.

THE COURT: You told me all about that scholarship. You were pending then, you all left together. *When was he arrested after that for the new offense?*

THE WITNESS: I don't know.

THE COURT: You don't know?

THE WITNESS: No, sir, I was living in Tyler then.

THE COURT: I know. But if you're a close family you would have known, wouldn't you?

THE WITNESS: I don't know the exact date. I know it's in September, that's all.

THE COURT: I just want a general—okay. *What's the new charge? What's the charge, the new one? What's the new allegation?*

THE WITNESS: It's possession.

THE COURT: He worked on June 5th when he left here from September of '92?

THE WITNESS: Yes, sir, he was working for my cousin.

THE COURT: How much was he earning?

THE WITNESS: He was making about two a week. Two hundred.

THE COURT: Two hundred?

THE WITNESS: Yes, sir. They were contracting Big Sur Waterbeds, delivery and set up. But it failed short because my cousin's wife got pregnant and so he was only what you call it, a one-man company.

THE COURT: What did he do with the money he was making, two hundred a week from June to September of '92?

THE WITNESS: One thing trying to pay his student loan. That's why he couldn't get back in school.

THE COURT: You have any proof that he was trying to pay his student loan? Does he have any papers to show me? See, I need to know what happened to that money, what he was doing, what his plans were. Because he and you and your mother told me that he wanted to go to college and if I see that he was trying to save money for college that's one thing. But if he cannot support the money he was making but relying on his mother to support him—you mentioned a while ago his demeanor and character. That's what I'm trying to establish, his demeanor and character.

THE WITNESS: He is a hard worker.

THE COURT: Where is the money he made? He had an appointed attorney. He's had an appointed attorney since the beginning of this case. He's a hard worker, why can't he pay the attorney or save money for college or what is he doing with the money. That's what I want to know,

*or has he been spending it all on controlled substances?*

(emphasis added).

Appellant also cites the following questions later asked of appellant by the prosecutor:

Q. What did you do with the $20 that you took from the man?

A. First of all I didn't take no $20, it was $7.

Q. Oh, it was $7?

A. $7, wasn't no $20. Five and two ones.

Q. *And you're certainly telling the Court that you didn't buy cocaine with that?*

A. No, sir.

(emphasis added).

Finally, appellant complains of the following comments made by the trial judge during his assessment of punishment:

THE COURT: As I told you, Mr. Johnson, when you appeared here on June 5th, 1992 with your mother and your brother that when your lawyer first asked me for probation on deferred adjudication I thought that he thought that I was crazy. Because as I told you, I have never given anybody deferred adjudication on an aggravated robbery before in a case. But I was so impressed with your lawyer that day and with your mother and your brother and with their efforts I said maybe I ought to try it, so I did. I reset your case for one year to June 18th, 1993 to see how you were doing in school. *Instead of that you went and you got arrested on a possession of a controlled substance charge. I have not heard any evidence about that case so I presume it's still pending, is that correct?*

DEFENSE COUNSEL: It is still pending, Your Honor.

THE COURT: *That's all I need to know. Still pending, so I have not heard a thing about it. And that's got nothing to do with your case, just goes to show that you did not go to college as you told me and that happened on September 18th when you should have been in school by then.* But your brother didn't get his scholarship. I think you rely too much on your brother and on anybody else. Maybe that's why you got in trouble. You had

nobody to guide you and you said that's why I'm going to rob somebody. . . . (emphasis added).

Appellant relies on *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992) for the proposition that evidence of unadjudicated extraneous offenses is not admissible during the punishment phase of trial. In *Grunsfeld*, the Texas Court of Criminal Appeals interpreted the then effective statute, Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a) (Vernon Supp.1991), which reads:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

Although the statute has been amended effective September 1, 1993, appellant's punishment hearing occurred in February of 1993 and thus, the prior statute applies.

The Court of Criminal Appeals reasoned that the statute's retention of the term "prior criminal record" and its definitional provision was an express limitation on the admission of unadjudicated extraneous offenses. *Grunsfeld*, 843 S.W.2d at 524–25. The court explained that the legislature would not allow extraneous, unadjudicated offenses and their details to be admissible while requiring that prior convictions be final before admitted. *Id.* at 525. The court concluded that evidence of unadjudicated offenses is inadmissible at the punishment phase of trial. *Id.* at 526.

The State rebuts appellant's argument by relying on this court's decision in *McMillian v. State*, 850 S.W.2d 777 (Tex.App.—Houston [14th Dist.] 1993). In *McMillian*, we differentiated between evidence of appellant's conduct *after* he committed the primary offense and evidence of appellant's conduct *prior to* the primary offense. *Id.* at 780. We reasoned that *Grunsfeld* was limited to acts committed *prior to* the primary offense and therefore, held that evidence of extraneous unadjudicated offenses occurring *after* the primary offense was admissible during the punishment phase of a trial. *Id.* at 780–81. However, the Texas Court of Criminal Appeals reversed our decision in *McMillian*, holding, "*Grunsfeld* makes no such distinction between uncharged bad acts committed prior to or after the offense for which the defendant is being prosecuted." *McMillian v. State*, 865 S.W.2d 459 (Tex.Crim.App. 1993). Thus, evidence of any unadjudicated extraneous offense is inadmissible at the punishment phase of a trial, regardless of whether it occurred before or after the offense for which the defendant is being punished. *Id.* However, our inquiry does not stop here.

■ The State also argues that the trial court did not consider the evidence for punishment purposes but only to determine when the arrest occurred. Since the arrest occurred on September 18, 1992, the judge knew that appellant had not entered college in Kansas as he had told the judge he would do during the June hearing. However, *Grunsfeld* and *McMillian* did not make a distinction for which purposes the evidence is inadmissible. Without such a distinction, we must presume that the Texas Court of Criminal Appeals did not intend for one to exist. Therefore, we hold that evidence of extraneous unadjudicated offenses is inadmissible for *any* purpose.

■ Furthermore, we no longer presume that the court did not consider inadmissible evidence. *Gipson v. State*, 844 S.W.2d 738, 741 (Tex.Crim.App.1992). The Court of Criminal Appeals expressly voided this presumption test, relying on Tex.R.App.P. 81(b)(2). *Id.* The court in *Gipson* states:

> Rule 81(b)(2) is clear. It says that we must reverse when error is found in the proceedings below *unless* we are able to analyze the error and its effects and determine beyond a reasonable doubt that error made no contribution to the conviction or punishment. In other words, Rule 81(b)(2) mandates reversal unless strong argument is brought to bear which enables the appellate court to make an intelligent determi-

**824**

nation that the error and all its tangential effects made *no* contribution to the conviction or punishment.

*Id.* (emphasis original).

■ The court further held that if the record does not expressly show that the error complained of clearly contributed to the conviction, then the error must undergo an in-depth harm analysis, using the factors set out in *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). *Gipson,* 844 S.W.2d at 741. In this case, the record does not expressly show that the error contributed to the punishment given by the trial court, thus we must apply the harm analysis. The harm analysis requires an examination of the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, we should consider how much weight a judge or juror would probably place upon the error. Finally, we must also determine whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* (citing *Harris,* 790 S.W.2d at 587).

In this case, the source of the error was the trial judge and the nature of the error was questions asked of a witness by the trial judge concerning what the extraneous offense was and when it occurred. The error was not emphasized by the State; the prosecutor asked one question concerning controlled substances in general. Since the trial judge did not hear any evidence concerning the details of the pending charge and stated that the timing of the arrest simply indicated to him that appellant was not in college as he had told the judge he would be, it is apparent that the judge did not place much weight upon the error. Finally, declaring this error harmless would not encourage the State to repeat the error with impunity because this case is strictly limited to its facts and the circumstances under which the judge asked the questions. We hold that the error in this case is harmless and overrule appellant's second and third points of error.

Accordingly, the judgment of the trial court is affirmed.

JACKSON B. SMITH, Jr., Justice (Ret.), sitting by appointment of the Texas Supreme Court.