**Lateef Salim GLIVENS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–94–01095–CR, 01–94–01096–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 18, 1996.

Discretionary Reviews Refused
May 29, 1996.

---

Charles Freeman, Houston, for Appellant.

John B. Holmes Jr., Dan McCrory, Dan Rizzo, Houston, for Appellee.

Before COHEN, HEDGES and TAFT, JJ.

## OPINION

COHEN, Justice.

A jury convicted appellant of two counts of aggravated robbery, under former TEX.PENAL CODE ANN. § 29.03, and the trial judge assessed his punishment at 60 years in prison for each count. We reverse and remand for a new punishment hearing.

In the light most favorable to the verdict, *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the evidence shows the following.

On the evening of June 30, 1993, attorney William Petersen was in his driveway working on his motor home, in preparation for the start of a family vacation the next day. Appellant walked up to the front end and stood there while his accomplice accosted Petersen at the rear of the motor home, pointed a gun at him, and ordered him to get down on the ground. Once Petersen had complied, appellant ordered Petersen not to look at him, and grabbed him from behind. Appellant and the other man took Petersen inside the garage, then into the house, where his wife Marilyn was already in bed for the night and his adult daughter Christine was still up, reading in the den. They pushed both Petersen and Christine to the floor, then brought Marilyn into the den. Appellant and his accomplice tied Petersen and Christine with telephone cord; Marilyn, who was partially paralyzed due to an aneurysm several years earlier, was not tied, but was forced to the floor alongside the others.

During the next two hours, the two men abused the Petersens intermittently, while ransacking their home. On several occasions during that two hours, appellant fondled Christine, and insinuated that he was going to rape her. Ultimately, appellant and his accomplice retied Petersen and Christine with duct tape, before departing in the Petersens' automobile with many of their other valuables. With Marilyn's help, Petersen and Christine managed to free themselves, and called the police. Each of Petersen and Christine later positively identified appellant in both a videotape lineup and in court; Petersen also positively identified appellant in an intervening live lineup as well. Separate criminal complaints were filed based on the June 30, 1993, episode, as it concerned William Petersen and Christine Petersen, separately.

At trial, appellant presented an alibi defense. The State countered with evidence of a similar extraneous offense, offered to prove identity; the State's witnesses, Jessie Moreno and his wife Ruth Moreno, testified that appellant and several accomplices, one of whom had a gun, had accosted them outside their home after dark on August 3, 1993, then taken them inside, tied them up with telephone cord, ordered them to the floor, and ransacked their home. Mr. Moreno testified that appellant and their other assailants stole the Morenos' car to make their getaway.

■ Point of error two concerns events immediately following the completion of jury selection, on Thursday afternoon, when the jury was released until the following week, without being sworn yet. On Monday morning, one of the veniremembers selected for the jury but as yet unsworn reminded the trial judge and attorneys that, during the collective questioning at voir dire, they had indicated they would question her individually later about a particular matter, but had omitted to do so. After such questioning that morning, she was excused without objection from either the defense or the State. Appellant contends that the trial judge committed reversible error in denying the request he made at that point—that an entirely new venire be summoned from which to pick an entirely new jury.

Instead of having an entirely new venire summoned, the trial judge had brought in for voir dire 12 new venirepersons; each side received three peremptory strikes, and one replacement juror was promptly selected. This procedure was within the trial court's authority. *Williams v. State,* 631 S.W.2d 955, 957 (Tex.App.—Austin 1982, no pet.).

Point of error two is overruled.

■ In point of error five, appellant contends that he did not receive effective assistance from his trial counsel at the punishment phase. In a non-capital case, the applicable standard is that first announced in *Ex parte Duffy,* 607 S.W.2d 507, 524 (Tex. Crim.App.1980). *See Craig v. State,* 825 S.W.2d 128, 129–30 (Tex.Crim.App.1992). Like that in *Strickland,* the *Duffy* standard requires a showing of harm due to the alleged ineffective assistance. *Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

Appellant asserts his trial counsel was ineffective in three specific respects. We need only reach appellant's third contention, that his trial counsel was ineffective in failing to object to evidence of the extraneous offense committed against the Morenos. We agree. That evidence was inadmissible at the punishment phase, under the version of TEX. CODE CRIM.P.ANN. art. 37.07 § 3(a) applicable here.[1] *Grunsfeld v. State,* 843 S.W.2d 521, 526 (Tex.Crim.App.1992).

The State contends that the extraneous offense is admissible in a pre-sentence investigation report under TEX.CODE CRIM.PROC. ANN. art. 42.12, section 9, (Vernon Supp. 1995), which provides that the judge shall direct the preparation of a report on "the criminal and social history of the defendant and any other information relating to the defendant. . . ." Appellant responds that the admissibility of the extraneous offense evidence in this case is governed not by article 42.12, but by article 37.07, which specifically made such evidence inadmissible to the of-

---

1. Act of June 15, 1989, 71st Leg., R.S., ch. 785, sec. 4.04, 1989 Tex.Gen.Laws 3471, 3492, *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, sec. 5.05, 1993 Tex.Gen.Laws 3586, 3759. Even though this case was tried after the September 1, 1993, effective date of the 1993 amendment to art. 37.07 § 3(a), the version of TEX.CODE CRIM.P.ANN. art. 37.07 § 3(a) applicable here is the version in effect at the time of the offense, by virtue of express language in the amendatory act itself. Section 5.09 says:

> (a) The change in law made by this article applies only to an offense committed on or after the effective date of this article. For

> purposes of this section, an offense is committed before the effective date of this article if any element of the offense occurs before the effective date.

> (b) An offense committed before the effective date of this article is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

Act of June 19, 1993, 73rd Leg., R.S., ch. 900, sec. 5.09, 1993 Tex.Gen.Laws 3586, 3760–61, *amended by* Act of May 31, 1995, 74th Leg., R.S., ch. 262, 1995 Texas Session Law Service 2517.

fense in this case. We agree with the appellant. We note that article 37.07 is the more specific statute concerning the admissibility of evidence at the punishment stage of trial. Moreover, it has been held in other contexts that article 37.07 controls over article 42.12 in the event of a conflict. *Turcio v. State*, 791 S.W.2d 188, 191 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd) (holding that preparation of a PSI report is discretionary under article 37.07 rather than mandatory under article 42.12); *Stewart v. State*, 732 S.W.2d 398, 401 (Tex.App.—Houston [14th Dist.] 1987, no pet.) (same).

In conducting the harm analysis *Duffy* requires, we are governed by the standard set forth in *Harris v. State*, 790 S.W.2d 568, 586, 587 (Tex.Crim.App.1989). *See Johnson v. State*, 871 S.W.2d 820, 823–24 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (applying harmless error rule to analyze erroneous admission of extraneous offense at punishment stage). The nature of the error was the admission of inadmissible evidence of an unadjudicated extraneous offense highly similar to the charged offense. In light of that similarity, we cannot determine beyond a reasonable doubt that this error made no contribution to the appellant's punishment—notwithstanding that the State did not emphasize the erroneously admitted evidence (and indeed made no argument at all at the punishment phase), and notwithstanding our belief that holding this error harmless will not tend to encourage its repetition. *Compare Johnson*, 871 S.W.2d at 824 (holding error harmless where judge heard no details of the extraneous offense and stated that he considered it only as evidence that defendant was not in college at the time). We have recently held that reversal was required for ineffective assistance of counsel where an attorney failed to object to inadmissible extraneous offenses contained in a pre-sentence investigation report. *Thomas v. State*, No. 01–94–00703–CR, —— S.W.2d —— [1995 WL 489100] (Tex.App.—Houston [1st Dist.] August 17, 1995, no pet.). *See also Spriggs v. Collins*, 993 F.2d 85, 89–90 (5th Cir.1993) (holding trial counsel was deficient for failing to object to unadjudicated extraneous offenses in a PSI report).

Appellate courts formerly presumed that in a non-jury trial, a judge disregards inadmissible testimony. *Tolbert v. State*, 743 S.W.2d 631, 633 (Tex.Crim.App.1988). That is no longer the law, *Tolbert* having been overruled in *Gipson v. State*, 844 S.W.2d 738, 741 (Tex.Crim.App.1992). Now, the controlling law is TEX.R.APP.P. 81(b)(2), which provides that the appellate court shall reverse the judgment, unless it determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Id.* The record shows that (1) the trial judge stated he had considered the PSI, having read it more than once; (2) the PSI presented the two robberies as though appellant had been found guilty of both; and (3) the trial judge initially stated that the court was proceeding to assess punishment in all four cases arising from these two robberies.

■ The extraneous offense against the Morenos was admitted during the guilt stage of the trial, and as a general rule, the fact finder at punishment may consider all evidence admitted at the guilt stage of trial. In this case, however, the evidence was not admitted at the guilt stage of trial for all purposes but only for a limited purpose, the jury having been instructed as follows:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may *only* consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment *and for no other purpose.*

(Emphasis supplied). Thus, the judge realized the evidence was not admissible for all purposes at the guilt stage, but we find no indication in the record that he did not consider it admissible for all purposes at the punishment stage. The purpose of the two

stages is different, as the present version of article 37.07 attests by making virtually any evidence of a defendant's misconduct admissible then. For example, under present law, the evidence against the Morenos would be admissible at the guilt stage only for the limited purposes stated in the above instruction, but it would be admissible for all purposes at the punishment stage. Because the purposes of the two stages of trial and the rules of evidence governing them are so different, the fact that the judge recognized the evidence as partly inadmissible at the guilt stage does not, standing alone, convince us beyond a reasonable doubt that he considered it wholly inadmissible at the punishment stage. There is no other evidence that the judge did not consider the evidence for all purposes at the punishment stage.

Point of error five is sustained.

The discussion of the remaining points of error does not meet the criteria for publication, TEX.R.APP.P. 90, and is thus ordered not published.

The judgment of the trial court is reversed, and the case is remanded for a new punishment hearing.