Erik Lorenzo YOUNG, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–97–00934–CR, 14–97–00935–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 1999.

James M. Leitner, Houston, for appellants.

Rikke Burke Graber, Houston, for appellees.

Panel consists of Justices YATES, MAURICE E. AMIDEI, and BAIRD.*

## OPINION

CHARLES F. BAIRD, Justice (Assigned).

Appellant was indicted for possession with intent to deliver a controlled substance, namely more than four but less than 20 grams of cocaine, alleged to have occurred on or about February 22, 1996, hereafter referred to as the first offense, cause number 14–97–935–CR. Appellant pled guilty, the trial court withheld a finding of guilt and placed appellant on deferred adjudication probation for a period of five years.

Subsequently, appellant was indicted for possession with intent to deliver a controlled substance, namely more than four but less than 20 grams of cocaine, alleged to have occurred on or about April 17, 1997, hereafter referred to as the second offense, cause number 14–97–934–CR.

Appellant waived his right to trial by jury and the trial court heard both the motion to adjudicate guilt for the first offense and the trial on the merits of the second offense. As to the first offense, the court found that appellant violated the terms and conditions of his deferred adjudication probation by committing the second offense. The trial court also found appellant guilty of the second offense. After the punishment hearing, the trial court assessed punishment in each case at 35 years confinement, to run concurrently.

As to the first offense, appellant raises a single point of error contending he received ineffective assistance of counsel at the punishment hearing. As to the second offense, appellant raises four points of error. Three of the points deal with the guilt phase of the trial; the fourth point of error contends appellant received ineffective assistance of counsel at the punishment phase of trial. This opinion will be divided into four parts. Points of error one, two and three, relating to the second offense, will be considered in parts I, II and III. We will then address point of error four along with the sole point of error from the first offense in part IV.

I.

As noted earlier, appellant was on deferred adjudication probation for the first offense at the time he committed the second offense. The State's motion to adjudicate appellant's guilt for the first offense and the trial of the second offense were consolidated into one proceeding. This joint proceeding makes resolution of the first point of error somewhat confusing. In this point, appellant contends the trial court erred in taking judicial notice of two urinalysis results, which tested positive for appellant's use of cocaine. It is clear from the record that these results were offered in connection with the motion to adjudicate guilt, which alleged, inter alia, that appellant failed to avoid injurious or vicious habits. In this point of error, appellant does not contend the trial court erred in taking judicial notice of these reports when determining whether to adjudicate appellant's guilt for the first offense.[1] Instead, in this point of error, appellant contends the urinalysis results were erroneously admitted in connection with the trial of the second offense. For the following reasons,

---

* Former Justice Charles F. Baird sitting by assignment.

1. In this discussion, we recognized that under article 42.12, § 55(b) of the Texas Code of Criminal Procedure, appellant could not have raised this point of error in an appeal from the first offense. See Sanders v. State, 944 S.W.2d 448, 450 (Tex.App.—Houston [14th] 1997, no pet.).

however, we presume the trial court did not consider the urinalysis reports in finding appellant guilty of the second offense.

For many years, the appellate courts of Texas employed a presumption that in a trial before the court, the trial court, as trier of fact, disregarded any inadmissible evidence. *See Tolbert v. State*, 743 S.W.2d 631, 633 (Tex.Crim.App.1988); *Morgan v. State*, 692 S.W.2d 877, 879 (Tex.Crim.App. 1985); *Keen v. State*, 626 S.W.2d 309, 314 (Tex.Crim.App.1981). This was a rebuttable presumption and the appellant bore the burden of proving the trial court relied upon or considered the inadmissible evidence in reaching its verdict or determining the punishment. *See Tamminen v. State*, 653 S.W.2d 799, 803 (Tex.Crim.App. 1983); *Angelle v. State*, 571 S.W.2d 301, 302 (Tex.Crim.App.1978).

The presumption, however, strained credulity because there was no principled basis upon which to presume the trial court that ruled the evidence admissible would not consider it because it was, in fact, inadmissible. Indeed, the presumption should have been the exact opposite: Why would a trial court admit evidence, over objection, if the trial court did not intend to consider it? *See* Sean Doran, John D. Jackson, and Michael L. Seigel, *Rethinking Adversariness in Nonjury Criminal Trials*, 23 Am. J.Crim. L. 1, 31 (1995). Eventually, the absurdity of the presumption was recognized and expressly overruled by the Court of Criminal Appeals in *Gipson v. State*, 844 S.W.2d 738, 741 (Tex. Crim.App.1992). *See Johnson v. State*, 871 S.W.2d 820, 823 (Tex.App.—Houston [14th] 1994, pet. ref'd).

■ We do not believe, however, that *Gipson* should be read to affect joint trials before the bench where the trial court will inevitably hear evidence that is relevant to one of the cases but not relevant to the other. Appellate courts should not assume that a trial court that considers evidence for one purpose would consider that·same evidence for an improper purpose. Indeed, common sense and logic dictate the opposite conclusion. For example, trial courts are required to instruct juries when relevant evidence may be considered for a limited purpose. *See Rankin v. State*, 974 S.W.2d 707, 713 (Tex.Crim.App.1996) (holding that upon proper request, rule 105(a) of the Texas Rules of Evidence requires a limiting instruction); *Rodriguez v. State*, 968 S.W.2d 554, 559 (Tex.App.— Houston [14th] 1998, no pet.). *See also* Tex.R. Evid. 105(a). Logic dictates, therefore, that our trial courts would follow the same rule of law in a bench trial.[2]

Therefore, we hold that in joint trials before the bench where the trial court hears evidence that is relevant to one case but not relevant to the other, it is presumed that the trial court considered the evidence only in deciding the case to which the evidence was relevant and for no other purpose. ;Of course, this is a rebuttable presumption. If the appellant can show the trial court considered the evidence for an improper purpose, error is present, and a harm analysis, if possible, is required.

■ In the instant case, the urinalysis reports were clearly relevant to the motion to adjudicate appellant's guilt for the first offense. It is equally clear that the reports had no relevance whatsoever to the issue of appellant's guilt on the second offense. Therefore, in light of the foregoing discussion, we presume the trial court considered the urinalysis reports only in deciding whether to adjudicate appellant guilty for the first offense and did not consider the reports in determining appellant's guilt of the second offense. There is nothing in the record to suggest the trial court improperly considered the urinalysis reports in finding appellant guilty of the second offense. We reiterate that appellant's only complaint about the admission of the reports is as to the second offense. Therefore, we hold the trial court did not

2. Under this same rationale, the parties are not required to request instruction on lesser included offenses. *See Shute v. State*, 877 S.W.2d 314, 315 (Tex.Crim.App.1994).

err in the trial of the second offense by taking judicial notice of the urinalysis reports related to the determination of whether to adjudicate appellant's guilt for the first offense. We overrule appellant's first point of error.

## II.

■ In point of error two, appellant contends the trial court erred by failing to have appellant specifically plead to the indictment. The record reflects that appellant's trial counsel entered the plea of not guilty. Appellant contends this point is controlled by *Mendez v. State*, 892 S.W.2d 81 (Tex.App.—Texarkana 1994), *rev'd*, 914 S.W.2d 579 (Tex.Crim.App.1996). Appellant's reliance on *Mendez*, however, is misplaced for two reasons. First, the Court of Criminal Appeals reversed and remanded *Mendez*, ordering the court of appeals to dismiss the appeal for want of jurisdiction. Second, and more substantively, *Mendez* dealt with a plea of nolo contendere, not a plea of guilty. Article 27.13, upon which the court of appeals in Mendez relied controls pleas of guilty and nolo contendere in felony cases and states that such pleas must be made in open court by the defendant in person. *See* TEX.CODE CRIM. PROC. ANN. art. 27.13 (Vernon 1989). In this case, appellant pleaded "not guilty," and thus, his plea is governed by article 27.16(a), which provides, in pertinent part: "The plea of not guilty may be made orally by the defendant *or by his counsel in open court.*" TEX.CODE CRIM. PROC. ANN. art. 27.16(a) (Vernon 1989) (emphasis added). In this case, as is permissible, appellant's trial counsel entered the plea of not guilty in open court. Appellant's second point of error is overruled.

## III.

In point of error three, appellant contends defense counsel was ineffective at the guilt phase of trial. The standard by which we review the effectiveness of counsel at the guilt phase of a non-capital trial was articulated in *Strickland v. Washing-*

*ton*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). The *Strickland* Court outlined a two-step analysis. First, the reviewing court must decide whether trial counsel's performance failed to constitute "reasonably effective assistance." Stated differently, the question is whether trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. If counsel's performance fell below the objective standard, the reviewing court then must determine whether there is a "reasonable probability" the result of the trial would have been different but for counsel's deficient performance. A reasonable probability is a "probability sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Absent both showings, a reviewing court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *See id.* at 687, 104 S.Ct. at 2064. *See also Boyd v. State*, 811 S.W.2d 105, 109 (Tex.Crim.App. 1991).

### A.

Appellant raises two separate complaints within this point of error. The first is directed toward counsel's failure to object and limit the consideration of appellant's urinalysis results to the motion to adjudicate. Appellant contends the State used the results to prove that appellant was an illegal drug dealer generally. We reject this complaint for two reasons. First, as we stated in response to appellant's first point of error, counsel was not required to object and limit the trial court's consideration of the evidence. Moreover, there is nothing in the record to suggest the trial court impermissibly considered the urinalysis results in determining appellant's guilt of the second offense.

Second, appellant's complaint that the State used the urinalysis results to prove

appellant was a drug dealer "generally" is not supported by the record. The State did not make any argument to that effect, nor did it contend appellant should be found guilty on this basis.

### B.

■ The second complaint within this point of error relates to testimony from Houston Police Officer Leon Byrd. On the date of the second offense, Byrd was working undercover and purchased a $25.00 rock of crack cocaine from Kevin Perry. After this purchase, Byrd gave a prearranged signal to a surveillance team. Perry was later arrested along with appellant, while both were inside appellant's vehicle. Following their arrests, Byrd was given other narcotics by police officer Robert Romano. The cocaine purchased by Byrd from Perry was marked as State's exhibit 1. The cocaine obtained from Romano was marked as State's exhibits 2 and 3.

During Byrd's testimony on direct examination, the complained of colloquy occurred between the prosecutor and Byrd:

Q: Show you what has been marked as State's Exhibit 1 and ask if you can identify that?

A: Yes, sir.

Q: And what is State's Exhibit 1?

A: It is the HPD narcotics evidence envelope.

Q: The outside of the envelope do you mark down what it is that you have seized, what it is that you have transported?

A: Yes, sir.

Q: All right. And this has the name Erik Young on it is that correct?

A: Yes, sir.

Q: Was there another envelope and another offense report in fact that was prepared for the case that you made on Kevin Perry?

A: Yes, sir.

Q: *Okay. So the narcotics here that we're talking about would be just*

*the ones recovered from Erik Young?*

A: *Yes, sir.*

Q: I show you what's been marked as State's Exhibit Number 2 and Number 3 and ask if you can identify those?

A: Yes, sir.

Q: And, does that appear to be the narcotics that you recovered from Officer Romano back in June of this year?

A: Yes, sir.

(emphasis added)

Appellant contends trial counsel was ineffective in allowing Byrd to testify that "State's exhibit one which had Appellant's name placed thereon were the drugs that were found on him [appellant]." We disagree with appellant's reading of the record. It is clear to us that the contraband contained in State's exhibit 1 was the substance Byrd purchased from Perry. We do not read the record as establishing that the substance in State's exhibit 1 was found on appellant. Furthermore, State's exhibit 1 was neither offered nor admitted into evidence. State's exhibits 2 and 3, however, were offered and admitted. Consequently, we cannot hold trial counsel should have objected to the foregoing testimony.

As to each complaint, we find the first prong of *Strickland* has not been met and we overrule point of error three.

### IV.

■ We will consolidate the sole point of error in the first case and point of error four in the second case as both contend appellant was denied effective assistance of counsel at the punishment phase of trial. Until recently, the applicable standard for evaluating the effectiveness of counsel during the punishment phase of a non-capital trial was that stated in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980). Now, however, the Court of Criminal Appeals has overruled *Duffy* and held that courts

are to apply the *Strickland* standard to all ineffective assistance of counsel claims. *See Hernandez v. State*, 988 S.W.2d 770 (Tex.Crim.App.1999). Accordingly, we will review appellant's contention under the *Strickland* standard discussed in part III, *supra*.

Appellant argues trial counsel was ineffective in failing to investigate the facts of the case and in not preparing appellant or any of the defense witnesses for the punishment hearing. Primarily, appellant complains of trial counsel admitting that he had "never really talked [with appellant about his use of drugs]," and for unexpectedly "popping" a theory for punishment on appellant. These admissions were made in the form of questions by trial counsel to appellant. While it may be argued that trial counsel could have spent more time preparing appellant's testimony for the punishment phase of trial, for the following reasons we cannot conclude trial counsel was ineffective.

During his direct examination of appellant, trial counsel established that appellant's drug problem was the reason for appellant violating the terms and conditions of his probation. He also developed that appellant felt terrible for the situation and burden he had placed on his family. Counsel then discussed with appellant an alternative to incarceration, namely participation in the "Safe P Program," a detoxification lock-down program. Appellant stated he was willing to participate in such a program.

Additionally, trial counsel called Edward Alexander, a family friend, appellant's sister, and appellant's mother to testify on his behalf. Alexander had recently visited with appellant and testified appellant had expressed a desire to return to his religious roots. Appellant's sister offered to provide appellant with a place to live and transportation if he were not incarcerated. Appellant's mother described appellant as an intelligent young man who was sincere about getting his life in order. She was willing to do whatever necessary to help appellant. Finally, counsel urged the trial court to not incarcerate appellant, but rather, to address the core of his problem by placing appellant in the Safe P Program and provide him with a clean and sober environment.

While counsel could have spent additional time preparing appellant for the punishment phase of trial, we glean from this record that counsel's conduct was not deficient and that he rendered reasonably effective assistance. *See id.* Therefore, we overrule the sole point of error relating to the first offense and the fourth point of error relating to the second offense.

We affirm the trial court's judgments in each case.