TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00757-CR


NO. 03-97-00758-CR







Donald L. Busby, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NOS. 44,936 & 44,937, HONORABLE OLIVER KELLEY, JUDGE PRESIDING








 Appellant Donald L. Busby was convicted of the offense of misapplication of
fiduciary property and granted community supervision. See Tex. Penal Code Ann. § 32.45 (West
1994 & Supp. 1999). Appellant is now appealing from orders revoking community supervision
in two cases. He asserts that a special prosecutor had no authority to file and present the motions
to revoke, that the trial court abused its discretion in revoking community supervision, and that
the trial court erred in admitting inadmissible evidence during the revocation hearing. We will
overrule appellant's points of error and affirm the trial court's order revoking community
supervision.

 The first issue presented by appellant is that: "The 'Special Prosecutor' had no
authority to file and present the motion to revoke appellant's community supervision." Appellant
summarizes his argument as follows:


1.  There is a distinction between a "special prosecutor" and a "prosecutor pro-tem." Ms. Ludwick was the "district attorney pro-tem" and as such needed to
have filed an oath with the clerk of the trial court.


2.  Ms. Ludwick was appointed as district attorney pro-tem "in the matter of
certain investigation currently pending before the July Term 1994 of the Bell
County Grand Jury." (Cl. R. I 4)  Her actions in filing the motion to revoke
Appellant's community supervision exceeded the scope of her appointment.


3.  The attempt by the court upon the hearing of the motion to revoke to appoint
Ms. Ludwick nunc pro tunc was without authority because there was no evidence
that the elected district attorney had disqualified himself as to the revocation.



 On July 5, 1994, prior to the indictment of appellant, the following order was filed:


IN THE MATTER OF AN INVESTIGATION
 * IN THE 264TH DISTRICT COURT

PENDING BEFORE THE JURY TERM,
 * OF

1994, OF THE BELL COUNTY GRAND JURY * BELL COUNTY, TEXAS


ORDER APPOINTING SPECIAL PROSECUTOR



 CAME ON THIS THE 5TH DAY OF JULY, 1994, THE MOTION OF THE DISTRICT
ATTORNEY, ARTHUR C. EADS, 264TH JUDICIAL DISTRICT, FOR THE APPOINTMENT OF
A SPECIAL PROSECUTOR PURSUANT TO ARTICLE 2.07, TEXAS CODE OF CRIMINAL
PROCEDURE, IN THE MATTER OF A CERTAIN INVESTIGATION CURRENTLY PENDING
BEFORE THE JULY TERM, A.D. 1994, OF THE BELL COUNTY GRAND JURY,


 AND THE COURT, HAVING CONSIDERED THE SAME, AND CONCLUDING THAT
SAID MOTION IS PROPER,


 IT IS THEREFORE ORDERED IN ACCORDANCE WITH ARTICLE 2.07, TEXAS CODE
OF CRIMINAL PROCEDURE THAT MARY LUDWICK AND MILLARD O. ANDERSON, JR.,
MEMBERS OF THE BAR, DALLAS COUNTY, TEXAS BE APPOINTED SPECIAL
PROSECUTORS FOR THE PURPOSE OF CARRYING OUT SAID INVESTIGATION AND
EACH SHALL HAVE ALL THE RIGHTS, DUTIES AND OBLIGATIONS OF THE OFFICE OF
THE PROSECUTOR TO CONCLUDE THE SAME. IT IS SO ORDERED.


SIGNED AND ENTERED THIS 5TH DAY OF JULY, 1994.



 /s/ Jack W. Prescott 

 JUDGE PRESIDING

 264TH JUDICIAL DISTRICT

 BELL COUNTY, TEXAS



 There is statutory recognition that a special prosecutor may prosecute a criminal
case. "It shall be the primary duty of all prosecuting attorneys, including special prosecutors, not
to convict, but to see that justice is done." Tex. Code Crim. Proc. Ann. art. 2.01 (West Supp.
1999). See Lopez v. State, 628 S.W.2d 77, 80 (Tex. Crim. App. 1982). A special prosecutor
need not take an oath of office. See id.; Ex parte Powers, 487 S.W.2d 101, 104 (Tex. Crim. App.
1972); Lopez v. State, 437 S.W.2d 268, 269 (Tex. Crim. App. 1968); see also Powers v. Hauck, 
399 F.2d 322, 323-26 (5th Cir. 1968). The requirement of filing an oath of office by a non-elected prosecutor applies only when the elected district attorney is absent or disqualified. See
Ballard v. State, 519 S.W.2d 426, 428 (Tex. Crim. App. 1975); Davis v. State, 840 S.W.2d 480,
487 (Tex. App.--Tyler 1992, pet. ref'd).

 Statutory authority provides for the appointment of an attorney pro tem:


Art. 2.07. Attorney pro tem


 (a)  Whenever an attorney for the state is disqualified to act in any case or
proceeding, is absent from the county or district, or is otherwise unable to perform
the duties of his office, or in any instance where there is no attorney for the state,
the judge of the court in which he represents the state may appoint any competent
attorney to perform the duties of the office during the absence or disqualification
of the attorney for the state.


 (b)  Except as otherwise provided by this subsection, if the appointed attorney
is also an attorney for the state, the duties of the appointed office are additional
duties of his present office, and he is not entitled to additional compensation. 
Nothing herein shall prevent a commissioners court of a county from contracting
with another commissioners court to pay expenses and reimburse compensation
paid by a county to an attorney for the state who is appointed to perform additional
duties.


 (b-1) An attorney for the state who is not disqualified to act may request the
court to permit him to recuse himself in a case for good cause and upon approval
by the court is disqualified.


 (c)  If the appointed attorney is not an attorney for the state, he is qualified to
perform the duties of the office for the period of absence or disqualification of the
attorney for the state on filing an oath with the clerk of the court. He shall receive
compensation in the same amount and manner as an attorney appointed to represent
an indigent person.


 (d)  In this article, "attorney for the state" means a county attorney, a district
attorney, or a criminal district attorney.



Tex. Code Crim. Proc. Ann. art. 2.07 (West 1977 & Supp. 1999).

 As appellant points out, there is a distinction between a "special prosecutor" and
a "prosecutor pro tem." See State v. Rosenbaum, 852 S.W.2d 525, 528-30 (Tex. Crim. App.
1993) (Clinton, J., concurring); Stephens v. State, 978 S.W.2d 728, 731 (Tex. App.--Austin
1998, pet. ref'd); Rogers v. State, 956 S.W.2d 624, 625 n.1 (Tex. App.--Texarkana 1997, pet.
ref'd). The trial court's order refers to Ms. Ludwick as a "special prosecutor" and also refers to
Article 2.07 of the Code of Criminal Procedure relating to the appointment of an attorney pro tem. 
The court's order is ambiguous. (1) In construing an ambiguous order, the complete record must be
considered. See Lone Star Cement Corp. v. Fair, 467 S.W.2d 402, 405 (Tex. 1971). If a court's
order is issued pursuant to a motion, that motion may aid greatly in construing the court's order. 
In this instance although the court's order refers to "the motion of the District Attorney" for the
appointment of a "special prosecutor," we cannot find such a motion in the record. There is no
finding in the court's order, and the record does not show that the Bell County District Attorney
was disqualified in this case, was absent from his district, or was otherwise unable to perform the
duties of his office. Furthermore, there is no finding in the court's order and the record does not
show that the Bell County District Attorney, although not disqualified to act, for good cause
shown was permitted by the court to recuse himself from the prosecution of this case. None of
the requirements for the appointment of an attorney pro tem, as required by Article 2.07, are
found in the court's order or in the record.

 On the other hand, the record shows that Ms. Ludwick was without exception
referred to and acted as a special prosecutor in the prosecution of this case. Counsel other than
a district attorney, a county attorney, or one of their full-time assistants may appear and prosecute
a cause on behalf of the State. See Bingham v. State, 290 S.W.2d 915, 919 (Tex. Crim. App.
1956); Phillips v. State, 263 S.W.2d 159, 160 (Tex. Crim. App. 1953). That Ms. Ludwick did
not take an oath as attorney pro tem is evidence that she was not acting in that capacity. The
record shows that the district attorney asked the district court to appoint a special prosecutor and
that the district attorney agreed to and acquiesced in Ms. Ludwick acting as a special prosecutor
in the prosecution of this case. It does not appear that the district attorney gave up his right to
control the prosecution of this case. Ms. Ludwick, although appointed to prosecute only this case, 
had the same authority and no more than an assistant district attorney employed on a full time
basis.

 Appellant did not claim that Ms. Ludwick was an attorney pro tem and had failed
to take and file an oath of office until the motion to revoke community supervision was filed. 
Generally, "all but the most fundamental evidentiary and procedural rules (or 'rights') are
forfeited if not asserted at or before trial." Wilson v. State, 977 S.W.2d 379, 380 (Tex. Crim.
App. 1998). Based on the record, we hold that Ms. Ludwick was not an attorney pro tem required
to file an oath of office, but was a special prosecutor and did not need to file an oath of office. (2) 
Ms. Ludwick, acting in the capacity of a special prosecutor, did not exceed the scope of her
authority in filing the motion to revoke community supervision. As pointed out by appellant, there
was not a proper predicate for the trial court to appoint Ms. Ludwick nunc pro tunc, but this
makes no difference because Ms. Ludwick, as a special prosecutor, had authority to proceed with
the revocation proceeding. Appellant's first point of error is overruled.

 In his second point of error, appellant urges that the trial court abused its discretion
in revoking his community supervision because the State failed to prove that he had violated the
conditions of his community supervision. When appellant was granted community supervision,
he agreed to the first condition that provided he would not commit any offense against the laws
of this state. The State, in moving for revocation, alleged among other grounds that appellant
violated the conditions of his community supervision by committing the criminal offense of falsely
holding himself out as a lawyer. The Texas Penal Code provides that:

§ 38.122. Falsely Holding Oneself Out as a Lawyer


 (a)  A person commits an offense if, with intent to obtain an economic
benefit for himself or herself, the person holds himself or herself out as a lawyer,
unless he or she is currently licensed to practice law in this state, another state, or
a foreign country and is in good standing with the State Bar of Texas and the state
bar or licensing authority of any and all other states and foreign countries where
licensed.


 (b)  An offense under Subsection (a) of this section is a felony of the third
degree.



Tex. Penal Code Ann. § 38.122 (West 1994).

 The State's motion to revoke included the following allegations:


A.  The Defendant, Donald L. Busby, has violated condition #1 of said supervision
in that on or about the 12th day of March, 1997, in Tarrant County, Texas, he did
then and there intentionally and knowingly to obtain an economic benefit for
himself, hold himself out as a lawyer to Evelyn R. Leopold for the benefit of Ellyn
Leopold while he was not then currently licensed to practice law in Texas, another
state, or any foreign country in violation of Section 38.122 of the Texas Penal
Code by giving the said Evelyn R. Leopold legal advice in writing for the benefit
of Ellyn Leopold with respect to a lawsuit pending in the 18th Judicial District
Court of Johnson County, Texas as Cause No. 203-93 styled Debbye Carlson et al
v. Natural Y Surgical Specialties, Inc., et al and a claim currently pending in the
United States Bankruptcy Court in the Eastern District of Michigan - Northern
Division as Cause No. 95-20512-11-AJS and styled In re: Dow Corning
Corporation.


C.  The Defendant, Donald L. Busby, has violated condition #1 of said supervision
in that on or about the 11th day of February, 1997, in Grayson County, Texas, he
did then and there intentionally and knowingly to obtain an economic benefit for
himself, hold himself out as a lawyer to Dorothy Hunt while he was not then
currently licensed to practice law in Texas, another state, or any foreign country
in violation of Section 38.122 of the Texas Penal Code by giving the said Dorothy
Hunt legal advice by phone with respect to a lawsuit originally filed in the 18th
Judicial District Court of Johnson County, Texas as Cause No. 203-90 styled
Debbye Carlson et al v. Natural Y Surgical Specialities, Inc. et al now in the form
of a claim currently pending in the United States Bankruptcy Court in the Eastern
District of Michigan - Northern Division as Cause No. 95-20512-11-AJS and styled
In re: Dow Corning Corporation.



 Appellate review of an order revoking community supervision is limited to
determining whether a trial court abused its discretion. See Cardona v. State, 665 S.W.2d 492,
493 (Tex. Crim. App. 1984); Campbell v. State, 427 S.W.2d 621, 622 (Tex. Crim. App. 1968);
Lee v. State, 952 S.W.2d 894, 897 (Tex. App.--Dallas 1997, no pet.). An abuse of discretion
occurs "only when the trial judge's decision was so clearly wrong as to lie outside the zone within
which reasonable persons might disagree." Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim.
App. 1992). The State's burden of proof in a revocation proceeding is by a preponderance of the
evidence. See Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); Scamardo v. State,
517 S.W.2d 293, 298 (Tex. Crim. App. 1975). An appellate court views the evidence presented
in a revocation proceeding in the light most favorable to the trial court's ruling. See Garrett v.
State, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); Lee, 952 S.W.2d at 897. Regardless of the
reasons given by the trial court for revoking community supervision, if evidence supports the
court's decision it will not be disturbed on appeal. Jackson v. State, 508 S.W.2d 89, 90 (Tex.
Crim. App. 1974). Evidence sufficient to prove one ground for revocation of community
supervision will support a trial court's order of revocation and an appellate court need not address
contentions relating to other grounds. See O'Neal v. State, 623 S.W.2d 660, 661 (Tex. Crim.
App. 1981); Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); Jones v. State, 571
S.W.2d 191, 193-94 (Tex. Crim. App. 1978); Ross v. State, 523 S.W.2d 402, 404 (Tex. Crim. 
App. 1975); Roberson v. State, 485 S.W.2d 795, 796 (Tex. Crim. App. 1972); Smith v. State, 932
S.W.2d 279, 283 (Tex. App.--Texarkana 1996, no pet.); Hendley v. State, 783 S.W.2d 750, 752
(Tex. App.--Houston [1st Dist.] 1990, no pet.).

 On May 26, 1994, appellant, an attorney licensed to practice law in Texas, signed
a contingent fee contract agreeing to represent Ellyn Leopold in a personal injury case relating to
her claim for damages resulting from breast implantations.

 On April 17, 1996, an agreement between the Commission for Lawyer Discipline
and appellant was filed in a Bell County district court. Appellant agreed to relinquish his license 
to practice law and to cease his practice of law either directly or indirectly after June 30, 1996. 
Appellant agreed that he would not accept any new clients or any new matters from existing clients
after the filing of the agreement. Appellant agreed that, no later than May 31, 1996, he would
"notify in writing all persons currently represented by him that he had consented to resign as a
licensee of the Supreme Court of Texas and as a member of the State Bar of Texas and to cease
the practice of law on June 30, 1996. . . . Copies of each such notification shall be provided to
. . . the Commission for Lawyer Discipline on or before June 5, 1996." On April 22, 1996, the
agreement was amended to provide that appellant could receive referral fees paid after his
resignation to practice law that were based on a referral fee agreement consummated prior to entry
by the Supreme Court of its order accepting appellant's resignation in lieu of discipline. On June
27, 1996, the Supreme Court of Texas entered an order accepting appellant's resignation in lieu
of discipline that provided:


STATE'S EXHIBIT 8-C



IN THE SUPREME COURT OF TEXAS



IN THE MATTER OF
)
 MISC. DOCKET NO.

)
 96-9158

DONALD L. BUSBY
)
 


ORDER ACCEPTING RESIGNATION IN LIEU OF DISCIPLINE



 On this day, the Court considered the Motion To Resign In Lieu of
Discipline of Donald L. Busby together with the Response of the Chief
Disciplinary Counsel of the Commission for Lawyer Discipline. The Court finds
that the Motion and Response each meet the applicable requirements of the Texas
Rules of Disciplinary Procedure. The Court, based upon the record in this
proceeding, hereby concludes that the following order is appropriate.


 IT IS ORDERED that the resignation of Donald L. Busby of Temple,
Texas, a licensee of this Court, as a member of the State Bar of Texas, and as
Attorney and Counselor of Law be, and the same is hereby, accepted. 
Accordingly, it is ordered that the law license of Donald L. Busby and the State
Bar membership card of Donald L. Busby be, and the same are hereby, canceled
and the name of Donald L. Busby shall be deleted from the list of persons licensed
to practice law within the State of Texas. The Court acknowledges receipt of the
law license issued by this Court to Donald L. Busby and the receipt of the State Bar
membership card issued to him.


 IT IS FURTHER ORDERED that Donald L. Busby be, and he is hereby
permanently enjoined and prohibited from practicing law in the State of Texas,
holding himself out as an attorney at law, performing any legal services for others,
giving legal advice to others, accepting any fee directly or indirectly for legal
services, appearing as counsel or in any representative capacity in any proceeding
in any Texas court or before any Texas administrative body (whether state, county,
municipal, or other), or holding himself out to others or using his name in any
manner in conjunction with the words "Attorney at Law," or "Counselor at Law,"
or "Lawyer."


 IT IS FURTHER ORDERED that Donald L. Busby shall, within thirty (30)
days after the date of this Order, notify in writing each and every justice of the
peace, judge, magistrate, and chief justice of each and every Texas court in which
he is an attorney of record in a pending matter, advising each such court of his
resignation and of the style and cause number of any matter pending in such court
together with the name, address, and telephone number of his client(s) in each such
matter. Donald L. Busby is further ORDERED to send a copy of each such
notification letter to the Office of the Chief Disciplinary Counsel, Commission for
Lawyer Discipline, P. O. Box 12487, Capitol Station, Austin, Texas 78711-2487,
Attn: William E. Minkley, Chief Trial Counsel.


 By the Court, en banc, in chambers, on this the 27th day of June, 1996.


Misc. Docket No. 96-9158



 On December 13, 1996, appellant was convicted of the offense of misapplication
of fiduciary property and granted community supervision.

 Attorney James Thompson testified that sometime in January 1997 appellant
assigned to him a number of contingent fee contracts in breast implant cases. These assignments,
which were back-dated to June 1, 1996, included appellant's contracts with Ellyn Leopold and
Dorothy Hunt. Thompson and appellant had a "50/50 split" referral fee agreement in 44 cases,
including those of Leopold and Hunt. Appellant retained his clients' files in Colorado until he
delivered them to Thompson in January 1997.

 Appellant advised Ellyn Leopold, Dorothy Hunt, and other clients that he was
closing his office and moving to Colorado but would keep them advised about their cases. He also
advised Ellyn Leopold, Dorothy Hunt, and other clients, that he had associated James Thompson,
a bankruptcy lawyer, to keep up with deadlines and help protect their interests. Never, in accord
with his agreement with the State Bar, did appellant notify Ellyn Leopold or his other clients that
he had been disbarred. Moreover, appellant failed to comply with his condition of community
supervision that not later than January 15, 1997, he would furnish the Bell County Supervisions
and Corrections Department a list of all cases from which he was entitled to a referral fee pursuant
to his agreement with the State Bar.

 On February 21, 1997, Evelyn R. Leopold, an attorney with a Fort Worth firm and
the sister of Ellyn Leopold, mailed to appellant and Thompson the following letter.


CANTEY & HANGER, L.L.P.


ATTORNEYS AT LAW



EVELYN R. LEOPOLD

DIRECT DIAL 817 877-2853


February 21, 1997



CERTIFIED MAIL/RRR


Mr. Donald L. Busby

730 South Camino del Rio

Durango, CO 81301


CERTIFIED MAIL/RRR


Mr. James Thompson

P.O. Box 246

Copperas Cove, TX 76522


In Re: Claim of Ellyn Leopold, Breast Implant Litigant


Dear Mr. Busby and Mr. Thompson:


 Through Don Busby, my sister, Ellyn Leopold, filed an action as one of the
Claimants in the breast implant litigation. As I understand, Mr. Busby referred her file
to Mr. James Thompson.


 I fully acknowledge that you all have the expertise in this area of litigation. This
letter is simply to ask a couple of questions.


 1. As I understand it, the entity that is in bankruptcy is Dow Corning. I had the
impression that the substance which was implanted in the Breast Implants was
manufactured by Dow Chemical. How has Dow Chemical been sued as a
Defendant? If so, why would actions against Dow Chemical be stayed if Dow
Corning is in bankruptcy? I understand that when a corporation goes into
bankruptcy, parent corporations and subsidiary corporations often have
litigation stayed against them in the initial proceedings, but that the stay can
often be successful lifted as to sister or parent corporations, such as Dow
Chemical.


 2. Also, she asked me to inquire as to what the chances are for Plaintiffs such as
her receiving a recovery and, what the time table might be.


Thank you for your courtesies.


 Yours very truly,


 /s/

 Evelyn R. Leopold


ERL/kll



 In response to her letter, Evelyn Leopold received from appellant the following
letter:


STATE'S EXHIBIT 18


DON BUSBY


730 SO. CAMINO DEL RIO


DURANGO, CO 81301



Tel: 970-259-5888


March 12, 1997



Evelyn R. Leopold

c/o Cantey & Hanger, L.L.P.

2100 Burnett Plaza

801 Cherry Street

Ft. Worth, Texas 76102


 Re: Ellyn Leopold, Breast Implant Litigation


Dear Ms. Leopold:


 Thanks for your letter of February 21, 1997 concerning the above matter.


 Dow Chemical is one of two stockholders in Dow Corning, Inc.. In addition to
being a stockholder, however, they conducted much of the research on the silicon that was
used in the breast implants manufactured by Dow Corning.


 We have sued Dow Chemical along with Dow Corning. The bankruptcy court has
taken the position that if you want to proceed against Dow Chemical before the bankruptcy
matter with Dow Corning is concluded, you must dismiss your claim against Dow
Corning.


 There is a case in Louisiana that is presently being tried against Dow Chemical by
several plaintiffs. We are hopeful this will establish Dow Chemical's involvement in the
breast implant liability question.


 We anticipate the Bankruptcy Court will adopt a plan sometime this year. There
have been two plans submitted, one by the company and one by the plaintiffs. It appears
that both plans provide for some compensation for the recipient of implants, however,
there the major difference is how much would be paid.


 I would anticipate payments to be made in 1998 and 1999.


 We will try to keep you posted on any developments.


 Sincerely,



 /s/

 Don Busby



 Both Evelyn Leopold, a lawyer, and her sister Ellyn Leopold testified that it was
sometime after the exchange of the quoted letters that they were made aware of the fact that
appellant had been disbarred and could no longer represent Ellyn. Evelyn Leopold reasonably
believed appellant was a practicing lawyer representing her sister when she directed the letter to
appellant asking for legal advice relating to her sister's personal injury claim. 

 Appellant characterizes his letter as merely a recitation of historical facts and insists
that the State failed to prove appellant gave legal advice as alleged in the motion to revoke. The
word "legal" used as an adjective means "pertaining to law." See Webster's Third New
International Dictionary, 1290 (Philip B. Gove, ed., 1961). The word "advice" may be defined
as "information given." Id. at 32. Here appellant made a direct letter contact with Evelyn
Leopold, relating to her sister's pending litigation giving her information pertaining to law. 
Moreover, a "person may confer legal advise not only by word of mouth but also by a course of
conduct. . . ." Brown v. Unauthorized Practice of Law Committee, 742 S.W.2d 34, 40 (Tex.
App.--Dallas 1987, writ denied).

 Dorothy Hunt was another one of appellant's breast-implant clients. She testified
that she was unaware of appellant's disbarment until March of 1997. On February 11, 1997, Ms.
Hunt had a telephone conversation with appellant, who was in Colorado. Immediately after their
telephone conversation, Ms. Hunt made a written memorandum relating to the conversation. The
memorandum was admitted in evidence, a portion of which follows:


STATE'S EXHIBIT 60


NOTES



I called Don Busby today and talked to him about the status of the litigation.


He said that all claims were filed. The Plaintiffs and Creditors have submitted their
plan for handling their claims. Prior to that, the company has filed its plan. The
judge will either decide to go with one of the plans or throw both of them out and
get his own plan.


Don feels a decision will be made within the next couple of months so that, by
May, we should have some kind of schedule for getting matters resolved.


He thinks the claimants may be scheduled for payment of a certain amount
irrespective of their being able to prove a direct relationship to the silicone and a
proviso entered whereby their additional claims can be litigated, also, under certain
conditions. He said it is entirely possible (probable) that the claimants' re-evaluations will be paid for by the Defendant (the Court?), but I am unclear
whether he meant the claimants would have to be re-evaluated before the
"settlement" or before (and in event of) the additional litigation.


Don said the Dalkon Shield claims were handled by a Trust Committee, which ran
up great expenses. They were omnipotent; their ruling was law. He doesn't think
a Trust Committee will be allowed in this matter.

He is enjoying the mountains very much. . . .



 Dyh

 2/11/97



 The State's evidence shows that appellant gave legal advice after being granted
community supervision. The trial court's order revoking community supervision is supported by
a preponderance of the evidence when viewed in the light most favorable to the court's order. The
evidence shows that while on community supervision and while not licensed to practice law,
intending to receive an economic benefit for himself, appellant gave legal advice to litigants in
personal injury cases. Thus, appellant falsely held himself out as a lawyer and violated the
condition of his community supervision. The trial court did not abuse its discretion in finding that
appellant violated a condition of his community supervision. Appellant's second point of error
is overruled.

 In his fourth point of error, appellant complains that the "trial court erred in
allowing testimony of the intent of the parties in entering a written agreement." Appellant's
complaint relates to some testimony of the Texas Commission for Lawyer Discipline special
prosecutor Lonny Morrison and chief prosecutor for the State Bar William Minkley concerning
the Rule 11 Agreement. Appellant argues that the testimony of Morrison and Minkley regarding
the intent of the parties to the Rule 11 Agreement should not have been admitted and that it cannot 
be presumed that the trial court did not consider this inadmissible testimony. Appellant cites
Gipson v. State, 844 S.W.2d 738 (Tex. Crim. App. 1992). (3) However, we need not presume
anything because the trial court explicitly stated that the court would not consider testimony
concerning the parties' intent. During Minkley's testimony the trial court stated: "Let me see if
I can cut this a little bit short. I am not at all interested in what the intent of the Rule 11
agreement is; only with the language of the agreement." The trial court by this statement in effect
changed the court's earlier rulings, sustained appellant's objections and stated that the court would
not consider the intent testimony but would look to the written instrument itself. Moreover,
appellant states in his brief that: "The trial court should not have allowed this testimony to be in
the record, especially since it went to prove none of the material allegations in the motion to
revoke community supervision." Appellant's fourth point of error is overruled.


 In his third point of error, appellant declares that: "The trial court erred in allowing
evidence of alleged crimes and bad acts that occurred prior to the commencement of appellant's 
community supervision." Appellant combined for argument his third and fourth points of error. 
That argument was mainly concerned with point of error four which we have already discussed. 
Appellant argues generally that matters occurring before he was granted community supervision
were admitted "in violation of Rule 404(b)." Appellant has not identified specifically the crimes
and bad acts that he alleges the evidence shows. Therefore it would be difficult and improper to
address these matters. Evidence of matters occurring before appellant was granted community
supervision would not have been admissible if it were admitted merely as evidence of appellant's
character. However, Rule 404(b) provides that such matters may be admissible if they tend to
show appellant's motive, opportunity, intent, preparation, or lack of mistake in committing the
offense alleged for revocation of community supervision. Evidence of appellant's disbarment, his
past dealings with clients, his association of other lawyers in handling client's cases, and fee-splitting arrangements that occurred before appellant was granted community supervision was
admissible. This evidence was relevant and admissible to prove appellant's prior disbarment, his
prior preparation, his motive, his intent, and his lack of mistake in continuing to hold himself out
as a lawyer after his disbarment. This evidence was relevant and admissible to show that he
falsely held himself out as a lawyer with intent to obtain an economic benefit for himself after his
disbarment. Appellant's third point of error is overruled.

 We overrule appellant's points of error and hold that the trial court did not abuse
its discretion in revoking appellant's community supervision. The trial court's order revoking
community supervision is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally*

Affirmed

Filed: April 22, 1999

Do Not Publish

















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. We note that the order on its face does not even show it is related to these cases.
2. In opinions in a related case the Court of Criminal Appeals and this Court made reference
to Ms. Mary Ludwick as an attorney pro tem. However, the capacity in which Ms. Ludwick acted
was not a contested issue in that case. See Busby v. State, 951 S.W.2d 928 (Tex. App.--Austin
1997), aff'd, 984 S.W.2d 627 (Tex. Crim. App. 1998).
3. The judgment in Gipson was "reverse[d] based on Rule 81(b)(2)" of the Texas Rules of
Appellate Procedure. Rule 82(b)(2) at that time required an appellate court to reverse a judgment
under review unless the appellate court determined beyond a reasonable doubt that the error in the
proceedings below made no contribution to the conviction or the punishment. This has been
changed by the new rules of appellate procedure. Except for constitutional error, "any other
error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." 
Tex. R. App. P. 44.2(b). The new rules of appellate procedure did not become effective until
September 1, 1997, which was more than a month after the revocation hearing in this case. 
However, notice of appeal was filed on October 20, 1997. In adopting the new rules, the Supreme
Court and the Court of Criminal Appeals "ordered that: . . . 2. These amended rules take effect
on September 1, 1997. Unless this order provides otherwise, they shall govern all proceedings
in . . . appeals . . . thereafter brought and in all such proceedings then pending, except to the
extent that in the opinion of the Court their application in a particular proceeding then pending
would not be feasible or would work injustice, in which case the former procedure may be
followed." Now Gipson would rarely be controlling when reviewing the nonconstitutional kind
of error about which appellant complains in this point of error.



these matters. Evidence of matters occurring before appellant was granted community
supervision would not have been admissible if it were admitted merely as evidence of appellant's
character. However, Rule 404(b) provides that such matters may be admissible if they tend to
show appellant's motive, opportunity, intent, preparation, or lack of mistake in committing the
offense alleged for revocation of community supervision. Evidence of appellant's disbarment, his
past dealings with clients, his association of other lawyers in handling client's cases, and fee-splitting arrangements that occurred before appellant was granted community supervision was
admissible. This evidence was relevant and admissible to prove appellant's prior disbarment, his
prior preparation, his motive, his intent, and his lack of mistake in continuing to hold himself out
as a lawyer after his disbarment. This evidence was relevant and admissible to show that he
falsely held himself out as a lawyer with intent to obtain an economic benefit for himself after his
disbarment. Appellant's third point of error is overruled.

 We overrule appellant's points of error and hold that the trial court did not abuse
its discretion in revoking appellant's community supervision. The trial court's order revoking
community supervision is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally*

Affirmed

Filed: April 22, 1999

Do Not Publish

















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. We note that the order on its face does not even show it is related to these cases.
2. In opinions in a related case the Court of Criminal Appeals and this Court made reference
to Ms. Mary Ludwick as an attorney pro tem. However, the capacity in which Ms. Ludwick acted
was not a contested issue in that case. See Busby v. State, 951 S.W.2d 928 (Tex. App.--Austin
1997), aff'd, 984 S.W.2d 627 (Tex. Crim. App. 1998).
3. The judgment in Gipson was "reverse[d] based on Rule 81(b)(2)" of the Texas Rules of
Appellate Procedure. Rule 82(b)(2) at that time required an appellate court to reverse a judgment
under review unless the appellate court determined beyond a reasonable doubt that the error in the
proceedings below made no contribution to the conviction or the punishment. This has been
changed by the new rules of appellate procedure. Except for constitutional error, "any other
error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." 
Tex. R. App. P. 44.2(b). The new rules of appellate procedure did not become effective until
September 1, 1997, which was more than a month after the revocation hearing in this case. 
However, notice of appeal was filed on October 20, 1997. In adopting the new rules, the Supreme
Court and the Court of Criminal Appeals "ordered that: . . . 2. These amended rules take effect
on September 1, 1997. Unless this order provides otherwise, they shall govern all proceedings
in . . . appeals . . . thereafter brought and in all such pr