COURT OF
APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-395-CR
TRAYSON L. WOODEN           
           
           
           
        APPELLANT
V.
THE STATE OF TEXAS           
           
           
           
           
    STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
------------
OPINION
------------
Introduction
Appellant Trayson L. Wooden appeals
his conviction by a jury of aggravated robbery with a deadly weapon. In three
points, Wooden contends that the evidence is legally insufficient to support his
conviction and that the trial court erred in overruling objections to improper
jury argument by the prosecutor. Because we hold that the evidence is legally
insufficient to support appellant's conviction, we reverse and render a judgment
of acquittal.
Background
On July 29, 2000, Gary Russell was
traveling southbound on Hemphill Street in Fort Worth. As he passed the Mexia
store, he noticed a parked truck in the parking lot to his right. The hood and
front driver's side door of the truck were open, and a man was lying on the
front seat on his stomach. A green car was pulled up next to the truck, and
Russell saw four men get out of the car and "spread[] out around" the
truck.
Thinking the men were "up to
no good," Russell turned right into the parking lot and pulled his car
around so that he could see the truck and the four men. He watched them for
about three to five minutes. While watching, he saw one of them reaching under
the hood of the truck, one leaning into the cab of the truck, where the man was
lying down, and moving his hands back and forth, and a third "trying to
open something up" in the back of the truck. Russell said he thought there
was a toolbox in the back of the truck. A fourth man, whom Russell later
identified as appellant, was "looking around."
While appellant was looking around,
he noticed Russell watching them. After appellant saw Russell, the four men got
in the green car. The driver pulled the car toward Russell, then turned around
so that the passenger side of the car was next to the driver's side of Russell's
car. Appellant was in the front passenger seat. Three of the four men, including
appellant, started talking to Russell, asking him "What's up with
you?" and similar things. The driver of the car used profanity and talked
to Russell in a vulgar way. Russell told the men he was a security guard, but
they did not believe him.
While the driver was talking to
Russell, Russell saw the back seat passenger, who was seated behind appellant,
reach down. When the man sat back up, Russell saw the barrel of a gun pointing
from the man's arm toward Russell's car. The man kept yelling at Russell,
"What's up with you?" When Russell saw the gun, he picked up his
cellular phone to dial 911, and the men drove away. Russell did not call 911
because he saw two police cars driving by on Hemphill. He stopped the officers
and told them what had happened.
Officer Charles Davis was on patrol
the morning of July 29, 2000 when he saw a green car in front of him at the
intersection of Hemphill and Berry. There were three men in the car, and each of
them kept turning around to look at him. Officer Davis pulled his car behind the
green car and ran a check on the car's license plate. When the check came back
clean, Officer Davis pulled back into the right hand lane of Hemphill and lost
sight of the car when it took a right on West Capps.
About thirty seconds after Officer
Davis lost sight of the green car, he received a dispatch, which prompted him to
try to follow the green car. Officer Davis found the green car and followed it
back to Hemphill where Officer Davis initiated a traffic stop. Officer Davis
said he believed that the front seat passenger turned around and looked at him.
Twice the green car pulled to the right and slowed down as if to stop. But the
car did not stop, and Officer Davis had to follow the car for about fifteen
minutes at speeds of up to eighty miles per hour.
Around 3118 Avenue L, appellant
threw some compact discs out of the car, which the police later found. On Vaughn
Boulevard all three men jumped out of the car, and Officer Davis pursued them on
foot to a house. The rear seat passenger was standing on the front porch of the
house with some other men. Officer Davis found appellant and the driver of the
green car hiding under a sheet on a mattress inside the house. The police
arrested all three men.
Police officers later found a rifle
with a sawed-off barrel behind a Racetrac station where Officer Davis had
followed the car, but lost sight of it in a dust cloud. A crime scene search
officer was unable to find any usable fingerprints on the rifle. A driver's
license number was etched into the rifle. The number did not match the license
number of any of the three men that were in the green car.
Russell identified three of the
men, including appellant. Appellant gave the following statement to the police
after his arrest:

 I was sitting in the front
 passenger seat of the green car. Cornelious was driving. Gary was in the back
 seat. We were cruising down Hemphill. We saw the red pickup truck in a parking
 lot with the driver[']s door . . . open and I saw a man laying in the front
 seat with his legs hanging out. We pulled in the parking lot to check on him
 and we saw that he was asleep. Me and Gary [sic] got out to go check on him.
 We were walking back to the car [when] the other car pulled up. We got back in
 the car and we drove over to him and we talked to him. The man asked us first
 if we had a problem and I asked him if he had a problem. I had told him that
 man off in that truck looked dead but he was asleep. The man told us that he
 was a security guard and told us that man had been there all night. Then we
 left. We had been driving on Hemphill [S]treet and we turned off on another
 street and then the patrol car came back and they got behind us. The patrol
 car then turned on the light behind us and we started to stop and then we took
 off and then we were picking up speed. W[e] ended up on the east side. We were
 on Ave [L] at Mrs[.] Mary's house. It was some peoples [sic] house and [their]
 mamma lives there. As we drove by the house near the field I threw the cd's
 out of the car. The cd's belonged to Cornelious. We then went on around the
 corner and ditched the car and ran back towards the house and we ran in the
 front door. Me and Cornelious striped [sic] our clothes and jumped in the bed
 and hid[] from the police. Gary was the one that went to the juvenile center.
 We did not put our hands inside the truck [and] we did not take anything. We
 drove over to the other car to let them know we weren't trying to take
 anything. I did not throw out the gun.

Romon Dominguez, the owner of the
truck that Russell saw in the parking lot, testified at appellant's trial that
he had gone to the taco stand next door to the parking lot at 11:00 p.m. the
night before. He had drunk six beers while he was at home that night. When
Dominguez tried to leave the taco stand, his truck wouldn't start, so he opened
the hood, got in the truck, locked the doors, and lay down to sleep until the
next morning. Dominguez said he awoke several times in the night, but he did not
see or hear anyone in or around his truck. He did not remember whether the
driver's side door was open or closed when he woke up the next morning.
Dominguez said he had $300 in cash
with him in the truck, as well as a cooler in the truck. None of these items
were taken. In addition, Dominguez testified that no other items were taken from
either the inside of the truck or the toolbox. The toolbox was still locked when
he woke up, and there were no scratches or pry marks on it.
Analysis
In his first point, appellant
contends the evidence is legally insufficient to support his conviction for
aggravated robbery. Specifically, appellant contends the evidence is not
sufficient to prove that he was a party to either the attempted theft or the
aggravated assault with a deadly weapon that comprise the charged aggravated
robbery.
In reviewing the legal sufficiency
of the evidence to support a conviction, we view all the evidence in the light
most favorable to the verdict. Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.
Crim. App. 1992), cert. denied, 507 U.S. 975 (1993). The critical
inquiry is whether, after so viewing the evidence, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.), cert. denied, 522
U.S. 844 (1997). This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The standard for
review is the same for direct and circumstantial evidence cases. Kutzner v.
State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).
Section 29.02(a)(2) of the penal
code defines robbery as follows: "A person commits an offense if, in the
course of committing theft . . . and with intent to obtain or maintain control
of the property, he . . . intentionally or knowingly threatens or places another
in fear of imminent bodily injury or death." Tex. Penal Code Ann. §
29.02(a)(2) (Vernon 1994). The offense becomes aggravated if the person
"uses or exhibits a deadly weapon." Id. § 29.03(a)(2).
"In the course of committing theft" includes an attempted theft and
the "immediate flight" from that attempted theft. Id. §
29.01(1). A person is guilty of an attempted offense if "with specific
intent to commit an offense, he does an act amounting to more than mere
preparation that tends but fails to effect the commission of the offense
intended." Id. § 15.01(a).
Appellant was convicted as a party
to the aggravated robbery. Section 7.02(a)(2) of the penal code provides that a
person is criminally responsible for another person's conduct if "acting
with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense." Id. § 7.02(a)(2).
Standing alone, proof that an
accused was present at the scene of the crime or assisted the primary actor in
making his getaway is insufficient. Scott v. State, 946 S.W.2d 166, 168
(Tex. App.--Austin 1997, pet. ref'd). The evidence must show that at the time of
the offense the parties were acting together, each contributing some part
towards the execution of their common purpose. Brooks v. State, 580
S.W.2d 825, 831 (Tex. Crim. App. [Panel Op.] 1979); Armstead v. State,
977 S.W.2d 791, 797 (Tex. App.--Fort Worth 1998, pet. ref'd). Evidence is
legally sufficient to convict under the law of parties when the defendant is
physically present at the commission of the offense and encourages its
commission by acts, words, or other agreement. Barnes v. State, 56
S.W.3d 221, 238 (Tex. App.--Fort Worth 2001, pet. ref'd). Whether an accused
participated as a party to an offense may be determined by examining the events
occurring before, during, and after the commission of the offense and by the
actions of the accused which show an understanding and common design to commit
the offense. Beier v. State, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985); Armstead,
977 S.W.2d at 797. In determining the legal sufficiency of the evidence to show
appellant's intent, and faced with a record that supports conflicting
inferences, we "must presume--even if it does not affirmatively appear in
the record--that the trier of fact resolved any such conflict in favor of the
prosecution, and must defer to that resolution." Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991); Armstead, 977 S.W.2d at
797.
Here, the evidence is sufficient to
prove that appellant and his companions committed an attempted theft even though
there is no evidence that any property was actually stolen. See Finley v.
State, 917 S.W.2d 122, 124-25 (Tex. App.--Austin 1996, pet. ref'd) (holding
that evidence was sufficient to prove attempted theft component of aggravated
robbery charge when appellant and his companions smashed hole in car window with
a rock, one of them stuck a hand inside the hole asking where the car keys were,
and another of the men said "Don't worry about that, we take what we
want"). The jury could rationally infer that appellant and the three men he
was with intended to steal the truck or property from the truck and committed
acts amounting to more than mere preparation by opening the truck door, trying
to open the toolbox, reaching under the hood, and posting appellant as a
lookout.
Appellant further contends that
even if the evidence is sufficient to prove attempted theft, it is not
sufficient to prove that appellant "solicited, encouraged, directed, aided,
or attempted to aid" the other passenger of the car in threatening Russell
by pointing the gun. The State contends that, to be guilty of aggravated robbery
as a party, Wooden need only have solicited, encouraged, directed, aided, or
attempted to aid the attempted theft. The State relies on this court's opinion
in Koontz v. State, 868 S.W.2d 27, 29 (Tex. App.--Fort Worth 1993, pet.
ref'd), for the proposition that "[a]ny act taken which aids either the
theft or the violence aids the commission of the robbery."
We disagree with the State's
interpretation of our holding in Koontz. In that case, the appellant
admitted being present during a home invasion aggravated robbery, but claimed
that he was not a party to the offense because he did not personally assault the
victim or take any of his property. We held that the evidence showed that the
appellant aided the aggravated robbery because his presence helped overwhelm the
victim. Id. The opinion states:

 There is no question that the
 evidence shows the commission of the offense of aggravated robbery with a
 deadly weapon on the occasion in question. The real issue is whether the
 evidence as we have described it is sufficient to show that Koontz solicited,
 encouraged, directed, aided, or attempted to aid others to commit the
 offense. We hold that it is because Koontz's presence with his companions
 at the time of the aggravated robbery aided or attempted to aid them
 in the commission of the offense by causing the victim and the
 victim's son to be overwhelmed by the sheer number of those involved, and
 because the jury was free to infer Koontz's intent in being present at the
 robbery by virtue of his having been present at a similar robbery
 involving a different victim.

Id. (emphasis added).
Thus, the appellant's acts in Koontz aided the entire offense, that is,
both the theft and assaultive component of the aggravated robbery, because his
presence facilitated both components of the offense. In addition, the jury could
infer that he intended to aid the entire offense because his presence at a
similar aggravated robbery indicated he had knowledge that the charged
aggravated robbery would occur.
Rule 7.02(a)(2) of the penal code
requires that a party to an offense intend to promote or assist "the
offense." Therefore, the State was required to prove that appellant
intended to promote or assist an aggravated robbery and that he solicited,
encouraged, directed, aided, or attempted to aid in the commission of an
aggravated robbery. See Glivens v. State, 918 S.W.2d 30, 34 (Tex.
App.--Houston [1st Dist.] 1996, pet. ref'd); Woods v. State,
749 S.W.2d 246, 248 (Tex. App.--Fort Worth 1988, no pet.).
(1) In order to convict a defendant as a party to an
aggravated offense, the State must prove that the defendant was criminally
responsible for the aggravating element. See Stephens v. State,
717 S.W.2d 338, 340 (Tex. Crim. App. 1986). In other words, the defendant must
have, with intent to promote or assist the aggravated robbery, solicited,
encouraged, directed, aided, or attempted to aid the other person in committing
the aggravating element. For example, in Stephens, the
court found the evidence legally insufficient to support a conviction for
aggravated rape when there was no evidence the defendant in that case was in the
room with the other participants in the rape when they made the threat against
the victim that aggravated the offense, nor that the defendant knew the other
participants had threatened the victim. Id. at 339.
This case is similar to Stephens because there is
no evidence in the record that appellant knew the gun was in the car or that
appellant aided or encouraged the other passenger to threaten Russell with the
gun. Appellant sat in the front passenger seat of the car, and the man with the
gun sat behind appellant. Appellant did not drive the car. Russell said that he
did not see any weapon while the men were looking around the truck. The
prosecutor argued during his closing argument that appellant would necessarily
have seen the gun, either when he entered the car or when the person with the
gun brought it into the car. However, the trial court sustained an objection to
this argument and instructed the jury to disregard it. While appellant's
statement, "I did not throw out the gun," is some evidence that
appellant knew a gun was thrown out of the car, it does not indicate that
appellant knew the gun was in the car when the men were talking to Russell or
that appellant encouraged his companion to threaten Russell with the gun.
Furthermore, although appellant's actions while the police were following the
green car indicate an intent to facilitate the flight, absent any evidence that
appellant knew the gun was in the car, the evidence is insufficient to prove
that appellant aided the flight in order to facilitate the aggravated robbery,
rather than the attempted theft.
During oral argument before this court, the State claimed for the first
time that penal code section 7.02(b) applies to this case. Tex. Penal Code Ann.
§ 7.02(b). Section 7.02(b) provides:

 If, in the attempt to carry out a conspiracy to commit one felony,
 another felony is committed by one of the conspirators, all conspirators are
 guilty of the felony actually committed, though having no intent to commit it,
 if the offense was committed in furtherance of the unlawful purpose and was
 one that should have been anticipated as a result of the carrying out of the
 conspiracy.

Id.
In this case, the indictment did not allege that appellant was
criminally responsible under rule 7.02(b), and the court's jury charge did not
authorize the jury to convict appellant under rule 7.02(b). Even if they had,
however, the evidence would be insufficient to convict appellant as a party
under rule 7.02(b). There is no evidence in the record that appellant agreed to
commit a felony. The only evidence of the value of any of the property the State
alleges appellant and his companions were attempting to steal is $300 in cash.
In order for an attempted theft to be a felony, the value of the property in
question must be at least $20,000. See id. § 15.01(d)
(stating that "[a]n offense under this section is one category lower than
the offense attempted"); id. § 31.03(e)(4) (Vernon
Supp. 2003) (providing for state jail felony level of punishment); id.
§ 31.03(e)(5) (providing that theft offense is "a felony of the third
degree if the value of the property stolen is $20,000 or more but less than
$100,000"). It is the State's burden to prove the value of the property in
a theft case. See Lily v. State, 789
S.W.2d 433, 435 (Tex. App.--Houston [14th Dist.] 1990,
no pet.) (holding that "[v]aluation of the property at above the threshold
amount is an essential element of the offense which the State must prove").
Accordingly, the State did not introduce sufficient evidence that the attempted
theft was a felony offense. Likewise, on the facts of this case, the State did
not show that appellant agreed to commit a robbery because, absent Russell's
testimony that appellant's companion pointed a gun at Russell, there is no
evidence in the record that appellant and his companions verbally or by other
conduct threatened Russell with death or bodily injury. See
Tex. Penal Code Ann. § 29.02. Thus, section 7.02(b) does not apply in this
case.
At most, the record evidence in this case shows appellant's intent to
promote or assist an attempted theft. Contra Escobar v. State, 28
S.W.3d 767, 772-76 (Tex. App.--Corpus Christi 2000, pet. ref'd) (holding that
evidence was legally and factually sufficient to support conviction for
aggravated robbery when appellant and his companions stole merchandise from a
department store and one of appellant's companions, who had left the store
before appellant and was sitting in the front seat of a parked car outside the
store, pointed a gun at a store employee who followed appellant, and appellant,
who could not have gotten into the car without seeing the gun, nevertheless got
into the backseat of the parked car and fled with his companions). Thus, we
sustain appellant's first issue. (2)
Conclusion
Because the evidence is legally insufficient to support appellant's
guilt, we reverse the judgment of the trial court and render a judgment of
acquittal. Tex. R. App. P. 43.2(c), 51.2(d); Burks v. United
States, 437 U.S. 1, 16-18, 98 S. Ct. 2141, 2150-51 (1978); Greene
v. Massey, 437 U.S. 19, 24-25, 98 S. Ct. 2151, 2154-55 (1978); Clewis
v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).
TERRIE LIVINGSTON
JUSTICE
PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.
PUBLISH
[DELIVERED JANUARY 16, 2003]

1. The State has interpreted this court's statement in Woods,
that "[i]n order to convict [an] appellant of aggravated robbery under
section 7.02(a)(2) the State had to prove that [the] appellant aided and abetted
as to each element of the offense of aggravated robbery," as
requiring a finding that the defendant actively participated in each element of
the charged offense. Woods, 749 S.W.2d at 248. But rule 7.02(a)(2) does
not require that a party's actions constitute one or more elements of the
intended offense, only that the party's actions show the intent to promote or
assist the offense and that the party encouraged, solicited, directed, or aided
the commission of the offense. See Tex. Penal Code Ann. § 7.02(a)(2).
For example, while holding someone down does not constitute an aggravated
assault, holding someone down so that a companion can cut that person's face
with a razor blade shows an intent to promote or assist an aggravated assault
and aids the commission of aggravated assault. See In re S.R.C., 59
S.W.3d 762, 762-63 (Tex. App.--Austin 2001, no pet.). Thus, the State's
interpretation of this court's statement in Woods is incorrect. The
quoted language correctly states the law of parties applicable to that case:
that to be guilty as a party to aggravated robbery, a defendant must intend
to promote or assist an aggravated robbery--not just a theft--and solicit,
encourage, direct, aid, or attempt to aid another person in committing
aggravated robbery. See Woods, 749 S.W.2d at 248.
2. Because by sustaining appellant's first
issue we must render a judgment of acquittal, we do not address appellant's
second issue. See Tex. R. App. P. 47.1.