

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00115-CR

_____

MICHAEL JAY BAYS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 38,318-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

In a bench trial, Michael Jay Bays stood trial simultaneously on three indictments, each of which alleged sexual offenses allegedly committed against three young girls related to Bays. In order to aid in protecting the identities of the child complainants, we employ the pseudonyms of Charlotte, Emily, and Anne. The first indictment, alleging offenses against Charlotte, resulted in two convictions and is addressed in our opinion issued this day in our cause number 06-10-00114-CR on the docket of this Court. The charges involving Emily resulted in an acquittal. The appeal addressed in this opinion is from a conviction on the third of those indictments, which alleged that Bays committed the offense against Anne of indecency with a child by contact, the alleged victim being Anne. TEX. PENAL CODE ANN. § 21.11 (West 2011).

Several points of error raised in this appeal are also presented in our cause number 06-10-00114-CR. Stated succinctly, the issues discussed in that companion case, which are common with this matter, regard (1) the qualification of expert witnesses presented by the State, and (2) whether impermissible hearsay was admitted at trial when a witness was allowed to testify that two of the child complainant's statements were consistent with each other. We overrule those points of error for the reasons stated in our opinion in our cause number 06-10-00114-CR.

In the brief for this case, Bays claims that Section 21.02 of the Texas Penal Code (criminalizing continuous sexual assault of a child) is unconstitutional. However, since this case

2

does not involve the application of that statute, we determine it not relevant to this matter and decline to address that argument.

There are two points of error specific to this matter which are not addressed in our companion opinion. In the present cause, Bays claims the evidence was insufficient to support a conviction for indecency with Anne by contact, and he maintains that the trial court erred in admitting a video-recorded interview of Anne into evidence.

**Sufficiency of the Evidence**

Anne, Bays' step-granddaughter, was a third grader, eight years old at the time of trial. During her testimony at trial, Anne said that Bays had touched her on her vagina, over the clothes, but also acknowledged on cross-examination that the touching she described could have been the result of an accident. From the context of various witnesses' testimony, this incident occurred in the living room of Bays' home, with Charlotte in the room as Emily and Anne were sitting on Bays' lap, at a time when other members of the family were outside. Barbara Bays (Bays' wife, grandmother of Charlotte and Anne and mother of Emily) testified that the incident occurred in the first few months of 2008. According to Barbara, shouts and a disturbance in the living room brought the other family members into the house; at that time, Anne was sitting in Bays' lap and Charlotte was screaming that Bays was restraining her there. Barbara said this was a kind of teasing game the family played, a game wherein Bays would act as if he would not yet release the

girls from his grasp in his lap. Barbara described Anne's demeanor when the adults entered the room:

> Well, she had a smile on her face. She looked a bit confused because of [Charlotte] being just fearful and - - but she was still - - she was smiling, and she got down. And [Emily] is sitting in her daddy's chair, like what, what.

A short time later, after Charlotte had taken the other two girls out of the room and talked to them, Charlotte led Emily and Anne in front of the family and announced that Anne had something to tell them. According to Barbara's testimony, although Charlotte said that the younger girls had something to relate, it was Charlotte who "did all the talking" and told the family that Bays had touched Anne "down there." Some family members (apparently Barbara and John and Maria, Anne's parents) took Anne into the bathroom and questioned her about these claims. Anne said at that time that Bays had not touched her.[1]

There was evidence that Anne frequently engaged in masturbation,[2] but Maria indicated that this behavior had begun "years" before the instant allegation was made. One of Anne's medical records indicates reports of masturbation or similar behavior in January 2006, when she would have been about five.

---

[1] About nine months later, in her video-recorded interview, Anne indicated that she did not want to say whether Bays had touched her with her father in the room and that even when he was outside the bathroom, she did not say she had been touched, and seemed concerned with her father listening at the door or peeking in.

[2] Gwen Seively ran a day care attended by Anne, and Seively noticed the frequent behavior and brought it to the attention of Anne's parents.

The extended family was divided in their beliefs about the truthfulness of Anne's allegation. Maria expressed her belief in the story, indicating that she believed that Anne had been abused, attributing Bays' conduct toward the child to his use of alcohol. Maria described another event when the girls were preparing to leave to attend a game; at that time, Anne came to the door and told Maria that Charlotte was crying. When Maria asked why this was occurring, Anne told her, "Because when we were little Grandpa touched all three of us." On the other hand, John and Barbara were both skeptical of (if not disbelieving) the allegation.

Bays' defense at trial was to emphasize that on cross-examination, Anne said the touching could have been an accident and to argue that Charlotte could have coached Anne and Emily to make the allegations against Bays, maintaining that Charlotte herself was not credible.[3]

In evaluating the legal sufficiency of the charged offense, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

_____

[3]Please see our opinion in cause number 06-10-00114-CR for details of Charlotte's testimony and personal history.

5

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2011); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Based on Anne's testimony to the trial court, the evidence was sufficient to support the conviction.[4]

**Admission of Video-Recorded Interview**

Bays also challenges the trial court's admission of the video-recorded interview of Anne as conducted by the forensic interviewer, Kelsey Drennan, on May 29, 2009, apparently a little over a year after the incident. The State offered this recording, citing Article 38.072 of the Texas Code of Criminal Procedure (which authorizes admission of a hearsay statement of a child sexual assault victim) as authority for its admission. The statute allows for a witness who is over the age of eighteen and the first person to whom a child sexual assault victim has related discernible details of the abuse to testify to those statements in trial. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2 (West Supp. 2011); *Broderick v. State*, 35 S.W.3d 67, 74 (Tex. App.—Texarkana 2000, pet. ref'd). In this case, Drennan offered no outcry testimony from Anne. Instead, during Drennan's testimony, the State was allowed to play the full video-recorded interview of Anne by Drennan.

---

[4]We reach this conclusion notwithstanding the statement by the State's appellate counsel at oral argument that if the video interview were excluded (see below), there was insufficient evidence to support Bays' conviction.

Bays complains the video interview was not admissible under Article 38.072 and allowed for the introduction of inadmissible hearsay. We agree.

In *Dunn v. State*, 125 S.W.3d 610, 614 (Tex. App.—Texarkana 2003, no pet.), the State gave notice of intent to offer outcry witness testimony, and that the State would offer in evidence the video-recorded interviews. *Id.* at 612–13. We found the outcry statute does not anticipate or provide for the admission of the video statements:

> The videotape containing the separate statements of each child, in this instance, was hearsay. It was therefore admissible only if some exception applied. The only suggested authority for such admission lies in Article 38.072. We cannot agree that the article contemplates that a videotape of the "outcry" will be introduced. It clearly contemplates that a person, subject to confrontation and cross-examination, will testify about what was said. Here, the interviews (which could not be cross-examined) were played, in their entirety, so the jury could observe the children, and the person who conducted the interviews simultaneously provided a commentary explaining what the jury was observing.

> By admitting the videotape into evidence, the trial court allowed evidence into the record in violation of the Texas statute. The ruling of the trial court is therefore outside the zone of reasonable disagreement. We therefore conclude the trial court abused its discretion by admitting the evidence.

*Id.* at 614. Even so, in *Dunn*, we found the admission of the video harmless because the victims all testified consistently with the content of the recording.

This case is very similar to the situation in *Dunn*. The State argues that *Dunn* is distinguishable because *Dunn* was a jury trial, while the instant case was a trial to the court. We

7

fail to understand how that distinction has a cogent bearing on this case. *See generally Gipson v. State*, 844 S.W.2d 738, 740 (Tex. Crim. App. 1992).

The State also argues that the video recording was admissible as a prior consistent statement. *See* TEX. R. EVID. 801(e)(1)(B). A statement is not barred as hearsay if the declarant testifies at trial, is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony while being offered to rebut an express or implied charge of recent fabrication, improper influence, or motive. *See* TEX. R. EVID. 801(e)(1)(B). The prior consistent statement must relate to the same matter or incident about which the declarant testified at trial. *Kipp v. State*, 876 S.W.2d 330, 338 (Tex. Crim. App. 1994). The prior consistent statement must, however, also have been made before the motive to fabricate arose, not after it arose. *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996); *Haughton v. State*, 805 S.W.2d 405, 408 (Tex. Crim. App. 1990) ("Rule 801(e)(1)(B) allows for the admission of prior consistent statements to rebut allegations of improper influence or motive. A statement made after the alleged motive to fabricate arose does not rebut the allegation. . . . [The rule] requires that a prior consistent statement be made before the alleged improper influence or motive arose.").

We question whether the statement made by Anne during the recorded interview is consistent with the statement made by her at trial. At trial, Anne said she was touched over the clothes, whereas in the statement made in her interview, she said that the touching was under the clothes on her skin. Also in the recorded interview, she made a sweeping hand gesture indicating

8

that Bays touched her under her clothes.[5]   Indecency with a child by contact can be committed with touching over the child's clothes.   TEX. PENAL CODE ANN. § 21.11(c)(1) (West 2011); *Guia v. State*, 723 S.W.2d 763, 766 (Tex. App.—Dallas 1986, pet. ref'd).   The act described by Anne in the video interview, while constituting the same criminal offense as that she testified to before the trial court, was also a different act:   touching beneath her clothing, versus the over-the-clothing touch she described at trial.   A touching outside of the clothing could be more consistent with an accidental touching than a touching of the skin, underneath the clothing.

Even if it could be said that Anne's statement in the video-recorded interview was entirely consistent with her trial testimony, the out-of-court statement was not made before the alleged improper influence or motive which Bays implied (through his cross-examination of State's witnesses) gave rise to the recitation of the incident.   In his cross-examination, Bays suggested that Charlotte had encouraged or put Anne and Emily up to making untrue allegations that Bays had inappropriately touched them because of hard feelings she harbored against him.   Charlotte described an incident where the three girls were in the living room with Bays, and Anne jumped up from his lap and asked why he was taking her pants down.   Charlotte took the younger girls into the bathroom, talked, and when they came out, Charlotte announced to Anne's parents and Barbara that Anne wanted to tell the adults something.   This led to the questioning of Anne by her family described above.   In his questioning, Bays also made reference to an extended telephone

---

[5]The record does not indicate that a similar gesture was made during the child's trial testimony and the gesture employed would have almost been out of place with the testimony given.

conversation among the three girls at some time before the allegations and outcries were made. These incidents (which form the basis of Bays' claim of Charlotte's improper influence upon Anne) both occurred prior to the May 29, 2009, video-recorded interview. Because the statement offered by the State was not made before the purported motive to fabricate or improper influence was brought to bear, Anne's statement in the video interview does not qualify as a prior consistent statement. *See Hammons v. State*, 239 S.W.3d 798, 804–05 (Tex. Crim. App. 2007).

The video interview was admissible neither under Article 38.072 for the reasons stated in *Dunn* and explained above, nor under the alternative theory of it being a prior consistent statement as argued by the State. The trial court erred in admitting the video interview in evidence. We next consider whether this erroneous admission was harmful.

Improper admission of hearsay evidence is nonconstitutional error. *Garcia v. State*, 126 S.W.3d 921, 927–28 (Tex. Crim. App. 2004). We must disregard the error unless it affected Bays' substantial rights. TEX. R. APP. P. 44.2(b). Although Anne testified at trial that she was touched in a proscribed area of her body, she acknowledged that the touching could have been an accident. As discussed above, the touching described in the recorded interview was different from that to which Anne testified at trial; it indicates a more purposeful (and, arguably, more significant) kind of touching—under the clothes of a young child. We recognize that when viewed from the perspective of determining whether a crime occurred, a touching under the clothes is no different from a touching outside of them; however (when taking into account that the

10

child acknowledged that the touching may have been accidental), a touching outside the clothes would be much more likely to be accidental than an under-the-clothes touching. Our harm analysis considers

> everything in the record, including any testimony or physical evidence admitted for the [fact-finder's] consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case . . . the State's theory and any defensive theories, closing arguments, . . . and whether the State emphasized the error.

*Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

This single proceeding was a simultaneous bench trial of three separate indictments, each alleging an offense or offenses perpetrated against a different young girl. In our opinion in cause number 06-10-00114-CR, we summarized the evidence supporting convictions for the offenses of continuous sexual assault and sexual assault as committed by Bays against his other step-granddaughter, Charlotte. The trial court acquitted Bays of the allegation involving an offense against Bays' daughter, Emily. Throughout trial, Bays vigorously impugned Charlotte's credibility and encouraged the impression that she had prompted or coached Emily and Anne to make their own accusations. Regarding the alleged offense against Anne, Bays was able to get Anne to agree that it was possible that the over-the-clothes touch she described on the stand could have been accidental. It is true Bays could have further cross-examined young Anne about her statements in the recorded interview, but it is questionable how effective such a course would have

11

been: cross-examining an eight-year-old child regarding the particulars of a statement given almost ten months prior to the child's in-court testimony.

We find the erroneous admission of Anne's video interview had a substantial influence on the outcome of the proceeding. *See Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002). If one takes no account of the recorded interview, there was not overwhelming evidence of guilt of the offense against Anne. *See Motilla v. State*, 78 S.W.3d 352, 353–54 (Tex. Crim. App. 2002). Had the State only presented the child's testimony, which was then qualified by her acknowledgment the touching could have been an accident, we would find ourselves in "virtual equipoise as to the harmlessness of the error." *Burnett*, 88 S.W.3d at 637–38.[6] We sustain Bays' second point of error.

---

[6]"For claims of non-constitutional error, we, like the Supreme Court, hold that 'a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding.' Put another way, if the reviewing court has 'a grave doubt' that, the result was free from the substantial influence of the error, then it must treat the error as if it did. 'Grave doubt means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.' Thus, 'in cases of grave doubt as to harmlessness the petitioner must win.'" *Burnett*, 88 S.W.3d at 637–38 (footnotes omitted).

## No Review of Claim of Cumulative Error

In his final point, Bays claims that the aggregate effect of the errors he has alleged adversely affected his substantial rights. *See* TEX. R. APP. P. 44.2(b). Errors may be found harmful in their cumulative effect. *See Feldman v. State*, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002). Because we have sustained his second point of error, we overrule this point as moot.

Having sustained Bays' second point of error, we reverse the trial court's judgment and remand for further proceedings not inconsistent with this opinion.

Bailey C. Moseley
Justice

Date Submitted:    October 19, 2011
Date Decided:      December 7, 2011

Do Not Publish